STATE v. JOHN L. KING.

*Criminal Law—Evidence—Affray—Intent.*

1. Upon trial of an indictment, the written examination of a witness taken before a committing magistrate, is inadmissible in evidence, unless the witness is dead, or too ill to be present, or insane, or has removed from the state at the instigation or connivance of the defendant or prosecutor; proof that he did not respond to the summons is not sufficient. Bat. Rev., ch. 33, § 34.
2. Where an act forbidden by law is intentionally done, the intent to do the act is the criminal intent which imparts to it the character of an offence, and hence on trial of an affray, a party cannot be heard to say that he did not intend to bring about a breach of the peace.
3. But where the act becomes criminal only by reason of the intent, then, unless the intent is proved the offence is not proved.

(*State* v. *Grady*, 83 N. C., 643; *State* v. *Perry*, 5 Jones, 9, cited and approved.)

INDICTMENT for an affray tried at January Term, 1882, of WAKE Superior Court, before *Gilmer, J.*

Appeal by defendant.

*Attorney General,* for the State.
*Messrs. Argo & Wilder,* for defendant.

SMITH, C. J. The defendant and William Broadwell were indicted for an affray and for mutual assaults of each

upon the other, and upon the trial the former was found guilty and the latter acquitted. The exceptions of the defendant presented in his appeal are to the rulings of the court in rejecting evidence on the trial before the jury. The absence of any statement of the facts of the transaction to which the excluded testimony may be deemed pertinent, is a serious impediment in the way of determining its competency and relevancy and passing upon the sufficiency of the exceptions; and it devolves upon the appellant to show the alleged errors in the rulings of the court, of which he complains.

1. The first exception is to the refusal of the court to allow the introduction of the written examination of one Smith, before the justice upon the preliminary hearing.

The witness had been summoned for the state, but failed to answer when called for by the solicitor, and (as the other defendant proved,) had stolen cotton and run away. Such testimony has been declared competent in this state when the witness is dead, or after search cannot be found; and perhaps the rule would have been extended to the case of a non-resident who was absent and beyond the jurisdiction of the court, as stated by Mr. WHARTON in his Law of Evidence, section 178. The cases are collected and the principle restated in *State* v. *Grady*, 83 N. C., 643. But the matter is now regulated by statute, and while the act recites the conditions on which the state may introduce the examination, we think the accused party, as he before had the right, so now, he may offer the evidence under like circumstances as is permitted to the state. Bat. Rev., ch. 33, § 34.

The statute authorizes the admission of the former testimony of the witness, taken by the examining magistrate, before the grand or petit jury, when the "accused was present at the taking thereof, and had an opportunity to hear the same and to cross-examine the deposing witness, if such witness be dead, or so ill as not to be able to travel, or by

procurement or connivance of the defendant hath removed from the state, or is of unsound mind." And so upon a fair construction of the act as modifying the pre-existing rule, the accused may use the testimony if the witness is dead or too ill to be present, or insane, or has removed from the state at the instigation or with the connivance of the prosecutor. It is apparent no foundation has been laid for the introduction of the evidence of the witness, who merely does not respond to the obligations of the subpœna, and is simply proved to have "*run away*," and not that any effort has been made to secure his presence

"Proof of mere disappearance," remarks the author to whom we have referred, in the absence of a regulating statute, "is not by itself enough to admit such testimony, if by due diligence the witness' attendance could have been secured," and numerous cases are referred to in support of the proposition. The proposed evidence was therefore properly refused, under the provisions of the statute.

2. The appellant excepts to the ruling out of his own testimony, and that he was not allowed to state that in using the language imputed to him and admitted by himself, (and which is not set out in the record) he did not intend to bring about a breach of the peace—nor to give his reasons for striking his associate defendant, while he was permitted to detail all the facts and circumstances attending the difficulty— nor his motives in grasping Broadwell by the throat— nor to repeat what he said to his father soon after the occurrence, not offered in corroboration of his own evidence, for which purpose no objection was made on the part of the state, but to bring out the reasons he then assigned for his conduct—nor to say that in using the offensive language to Broadwell he did not then have any idea it would lead to a fight.

This evidence all belongs to one class, and the contention is that it is competent to a defendant when charged

with a criminal act to testify to his *intent* as a state or operation of his mind, outside of the act done, and self-exculpatory in its effect.

The proposition asserted in broad terms and sufficient to comprehend and sustain the exceptions to the rejected testimony, is in our opinion unsupported by authority or sound reason, and rests upon a·misconception˙ of the class of cases to which such evidence is applicable. When an act forbidden by law is intentionally done, the intent to do the act is the criminal intent which imparts to it the character of an offence, and no one who violates the law, which he is conclusively presumed to know, can be heard to say that he had no criminal intent in doing the forbidden act. A party cannot excuse himself for an act intentionally done, and which is in violation of law, by saying he did not so intend.

But where the acts are themselves equivocal and become criminal only by reason of the intent with which they are done, both must unite to constitute the offence, and both facts must be proved in order to a conviction. In such case, unless the intent is proved the offence is not proved. As the criminal intent may be and usually is inferred from the declarations and conduct of the accused, he is permitted to disavow the imputed purpose and repel the presumption. None of the cited cases go beyond this.

In *Seymour* v. *Wilson,* 14 N. Y., 568, under a statute which says that the question of fraudulent intent in making an assignment or transfer "*shall be a question of fact and not of law,*" the assignor was allowed to say upon his examination that it was not his purpose in making the conveyance to delay or defraud his creditors; and this was again ruled in *Griffin* v. *Marquand,* 21 N. Y., 121, and *Forbes* v. *Waller,* 25 N. Y., 430, upon the authority of the preceding case.

. In *Miller* v. *People,* 5 Barb., 203, where the defendant was charged with an indecent exposure of his person, and the

proof was that he was seen undressed in the back yard of his own premises, he was allowed to show that the *exposure* was not intentional, and the rule is thus declared by the court: " It is a general rule of evidence that a man shall be taken to intend that which he does or which is the immediate and natural consequence of the act.  But when an act in itself indifferent becomes criminal, if it be done with a particular intent, then the intent must be alleged and proved." In *Willard* v. *Herkimer County*, 44 N. Y., 22, a case growing out of a statute which subjected to the penalty of fifty dollars any person who removed a pauper from one county to another without legal authority, and there left him, when the removal was made with *intent to charge the county to which the pauper was removed with his support*, the court while adhering to previous decisions on the maxim *stare decisis*, nevertheless say : "Were we without any direct authority in this court adjudging the admissibility of such an inquiry (of intent) to be put to the accused party, I should be very unwilling now to concede it.  Intent is to be judged of usually by the light of surrounding facts and circumstances. These afford a satisfactory test which all can know and consider as well as the witness."

The test of the admissibility of the evidence of motive or intent, is the materiality of the motive or intent in giving character to the act, and when they must as separate elements co-exist to constitute guilt or produce a legal re-ult. When as distinct facts each must be alleged and proved, the inference to be deduced may be met and repelled by the direct testimony of the party as to their being entertained by him.  1 Whar. Evi., § 482.  None of the evidence offered comes up to this requirement, and we cannot see how the defendant's conduct in provoking and bringing on a fight is extenuated by his belief that his adversary would submit to the offered indignities and show no spirit of resentment. If his language was calculated to lead to a breach of the

peace and did lead to a breach of the peace, he must be deemed in law to have intended this natural result of the act, and cannot escape its legal consequences.

The case of the *State* v. *Perry*, 5 Jones, 9, in which it is held that where a person uses towards another such abusive language as is calculated and intended to bring on a fight, and induces that other to strike him, he is guilty, though he may be unable to return the blow, is not repugnant to the rule we have laid down.

The intent is inseparable from the tendency of the provocation, and they are connected to express fully the proposition of law. When one knowingly gives such provocation as is *calculated* to bring about retaliatory violence, and violence does ensue in consequence, he cannot escape responsibility to the criminal law, by saying that he did not expect it from the adversary to whom it was offered, because of a supposed want of courage to resent.

So far as we can see, the proffered evidence in defence was incompetent upon the question of the defendant's guilt and was properly excluded from the jury.

An affray has been committed and one party has been acquitted. We perceive no injustice done the other at the trial.

There is no error, and this will be certified.

No error.                               Affirmed.