MAURICE DEAN FREEZE, BY HIS NEXT FRIEND, JOHN D. FREEZE, JR.
v. BETTY J. CONGLETON

No. 49

(Filed 6 January 1970)

**1. Husband and Wife § 14—   estate by entireties**

A title conveying real estate to a husband and his wife, nothing else appearing, creates an estate by the entireties.

**2. Husband and Wife § 15—   estate by entireties — condition of the premises**

Where a husband and wife own a home as tenants by the entireties, the husband is responsible for the condition of the premises.

**3. Negligence § 59—   injury to infant licensee — home of defendant — unmarked glass door — nonsuit**

In an action for injuries received by a five-year-old social guest when he walked or ran into a clear and unmarked glass door in defendant's home, plaintiff's evidence was insufficient to submit the issue of defendant's negligence to the jury, where it tended to show that plaintiff's mother, who was present, knew that the glass door had been closed and that plaintiff was walking towards it, but that she failed to take timely action to prevent the accident, and there was no evidence that defendant was aware of any danger to plaintiff.

**4. Negligence § 59—   injury to infant licensee — duty of parents**

Ordinarily, when the parent of an infant licensee is present with the infant and has full knowledge of the condition of the premises, the duty to warn of defective conditions falls on the parent.

**5. Negligence § 59—   duty of owner to infant — dangerous condition on premises — presence of parents**

Ordinarily, there is a duty on the owner to exercise ordinary care for protection of one of tender years, after his presence in a dangerous situation is or should have been known, but this duty of care does not apply when the infant is accompanied by his parent or by someone to whom his custody has been committed by the parent.

MOORE, J., did not participate in the decision of this case.

ON certiorari to review the decision of the North Carolina Court of Appeals reported in 5 N.C.App. 472, which reversed a judgment of involuntary nonsuit entered by *Lupton, J.* at the March 24, 1969 Session, CABARRUS Superior Court.

*Hartsell, Hartsell & Mills by K. Michael Koontz; Boyd C. Campbell, Jr., for the plaintiff.*

*Williams, Willeford & Boger by John Hugh Williams, for the defendant.*

HIGGINS, J.

The plaintiff, Maurice Dean Freeze, age 5 years, by his next friend, instituted this civil action against Betty J. Congleton to recover damages for injuries he sustained when he "walked or ran" into a clear, unmarked glass door between the living room and the porch of the Congleton home. The accident occurred about 2:30 in the afternoon of October 8, 1967 while the minor plaintiff, his father, his mother, and his older brother were guests of the Congletons in Raleigh. The infant plaintiff's mother and the defendant, Mrs. Congleton, are sisters.

The plaintiff alleged:

"That at all times herein alleged the defendant, Betty J. Congleton and her husband, Albert B. Congleton, were the owners of a certain house and lot located at 4400 Drexel Drive, in the City of Raleigh, Wake County, North Carolina."

The complaint further alleged:

"That the injuries to the plaintiff were due, caused and occasioned by and followed as the sole, direct and proximate result of the negligence of the defendant, Betty J. Congleton, in that: (a) She did, with full knowledge of the plaintiff's age and lack of appreciation of danger, close said sliding glass door and block the doorway through which the minor plaintiff had en- ·tered the defendant's residence and did while sitting next to said door fail to warn the minor plaintiff as he approached said door that she had blocked same with an invisible glass.

(b) She did, although other children on previous occasions had walked and run into said sliding glass door, fail to mark said door in any way or manner whatsoever or warn the plaintiff and other young children of the presence and danger of said invisible glass door."

Dr. Altany, a plastic surgeon, testified by letter: "Due to the nature and extent of these residual scars, the patient will always have permanent evidence of facial scarring of the left cheek and left lower lip." The plaintiff's only other witness was his mother, Mrs. Frances Freeze. She testified:

"On Sunday, October 8, 1967, I was at my sister's home in Raleigh, North Carolina, together with my sons, Maurice and John, and my husband. We spent Saturday night. Sunday was a mild, sunny day. A little after 2:30 p.m. Maurice was involved in an accident at my sister's home. I was in the den when the accident occurred together with my husband, my sister Betty, her husband A. B., and their son Butch.

Immediately prior to the accident, Maurice was in the back yard playing with the other children. The sliding glass doors were open at the time and had been open all afternoon. Maurice had been in and out the door four or five times earlier in the afternoon and each time the door was open.

A little after 2:30 p.m., Maurice came through the screen door onto the back porch which is just outside the sliding glass doors. He then came through the porch, the opening to the den and through the den to go to the bathroom. While Maurice was in the bathroom, my sister who was sitting beside the door reached behind her and pushed the sliding glass door shut. At the time my sister closed the door, there were no markings on it and nothing in front of the door. Maurice came back into the den. When I last saw him, he was walking toward the sliding glass door and approximately five feet from it. At that time a cat jumped in my lap and I looked down at the cat. I then heard a crash and looked up and saw the broken glass. My sister, seated directly beside the door, did not say or do anything as Maurice approached the door, and when Maurice went through the door my sister was seated about one foot from where he went through. There was nothing over this opening that you could see as Maurice walked toward it. It was clear, clean glass."

The plaintiff alleged that the defendant and her husband were the owners of the house and had lived there for five or six years. The witness, her husband and children, including the one injured, had been guests in the home "once or twice a year. During this time, the only change in the construction of the house was that the back porch was screened in."

[1, 2]    The allegation that the husband and wife were the owners of the home necessarily implies that as husband and wife they had

title to it. A title conveying real estate to a husband and his wife, nothing else appearing, creates an estate by the entireties. *Nesbitt v. Fairview Farms,* 239 N.C. 481, 80 S.E. 2d 472; *Davis v. Bass,* 188 N.C. 200, 124 S.E. 566; *Morton v. Lumber Co.,* 154 N.C. 278, 70 S.E. 467. ". . . (W)here an estate by the entirety exists, the husband, during coverture, is entitled to full control . . . of the land to the exclusion of his wife." *Williams v. Williams,* 231 N.C. 33, 56 S.E. 2d 20; *Atkinson v. Atkinson,* 225 N.C. 120, 33 S.E. 2d 666. The condition of the premises was the responsibility of the husband.

[3] Under the allegations of the complaint, the plaintiff must make out a case of actionable negligence against the defendant for closing the door and failing to warn the infant plaintiff of the danger. At the time of the injury, the defendant, her husband, their son Butch, and the plaintiff's mother and father were in the den watching a world series baseball game on television.

According to the evidence of Mrs. Freeze, the room was "a combination of kitchen, dining room and den . . . approximately 12 x 15 or 12 x 20 feet." The room contained a refrigerator, a stove, a sink, oven, two tables, lamp, at least one sofa, a television set and numerous chairs. The size of the room, the character and amount of furnishings, the number of persons present, and the progress of the game on television all argue strongly the defendant did not know Maurice had returned to the den. Evidence is lacking, therefore, that she had opportunity to warn him after he re-entered the room. The mother, who was present, had actual knowledge of these pertinent facts and knew he was walking toward the door and was five feet from it. Nevertheless, she permitted a cat to distract her attention. This observation is not intended as a reflection on the mother, but to emphasize the accidental character of the unfortunate mishap which occurred.

[3-5] Under the circumstances here disclosed, should the defendant be held responsible for failure to stop the boy on his approach to the door? "Ordinarily when parents are present, in charge of their children of tender years, the responsibility for their care and safety falls on the parents." *Watson v. Nichols,* 270 N.C. 733, 155 S.E. 2d 154. The plaintiff's witness, Mrs. Freeze, quoted the defendant as having said that other children had run into the door, and that she herself had done so on one occasion. However, there is no evidence either that anyone was injured, or that the door was broken, and no reason to anticipate that a boy five years old would crash into it with such force as to drive himself all the way through the glass and be injured. The parents of the injured boy knew the glass

door was deceptive, hard to see, and easy to run into. They knew the likelihood that one approaching the door space might find it difficult to detect whether the door was open or closed. That others had been deceived added little, if anything, to the knowledge that the danger was there before their eyes, and had been there to their knowledge for five or six years, during which they had been occasional guests in the home. Ordinarily, when the parent of an infant licensee is present with the infant and has full knowledge of the condition of the premises, the duty to warn of defective conditions falls on the parent. Ordinarily, there is a duty on the owner to exercise ordinary care for the protection of one of tender years, after his presence in a dangerous situation is or should have been known. However, ". . . (T)his duty of care as to the infant does not apply when he is accompanied by his parent or by someone to whom his custody has been committed by the parent." 65 C.J.S., Negligence, § 63(68), p. 799; *Hood v. Coach Co.,* 249 N.C. 534, 107 S.E. 2d 154; *Wagoner v. Railroad,* 238 N.C. 162, 77 S.E. 2d 701.

The value of notice of danger to a lively and venturesome boy of five is questionable. To be of value, notice, when due, should be given to the parent or custodian. In this instance, the mother had timely notice — she saw the door closed.

For the reasons herein discussed, we conclude the evidence offered in the trial court was insufficient to warrant its submission to the jury. The judgment of nonsuit should have been sustained. The decision of the North Carolina Court of Appeals, holding otherwise, is

Reversed.

Moore, J., did not participate in the decision of this case.