MARY MILLS LAWRENCE v. KERMIT W. LAWRENCE, JR.

No. 8917DC1119

(Filed 7 August 1990)

1. **Divorce and Alimony § 30 (NCI3d)— classification of property as separate—error—no gift intended to marital estate—remand for determination**

The trial court erred in determining that an 8.6 acre tract of land was defendant's separate property, since defendant received the first one-half interest in the 8.6 acres by a partition deed between tenants in common, but the second one-half interest in the tract was conveyed by a deed which named plaintiff and defendant, as husband and wife, grantees and it was therefore held by the parties as tenants by the entirety. If no gift to the marital estate was intended at the time of the conveyance, defendant must show this by clear, cogent, and convincing evidence, and the case is remanded to determine if such evidence was presented.

**Am Jur 2d, Divorce and Separation §§ 880, 888.**

1

2. **Divorce and Alimony § 30 (NCI3d)— use of separate property to purchase tract—presumption of gift to marital estate not rebutted**

The trial court erred by relying on defendant's use of separate property to purchase a 24 acre tract to rebut the presumption of a gift to the marital estate; moreover, the trial court's findings that the property was "ancestral," that plaintiff did not know its location, and her lack of testimony that she understood that defendant intended to make a gift were irrelevant to the issue of whether the property was marital property.

**Am Jur 2d, Divorce and Separation § 887.**

3. **Divorce and Alimony § 30 (NCI3d)— marital and separate property—source of funds approach improper**

The trial court erred in using a source of funds approach to determine what portion of a 56.6 acre tract was marital property as opposed to separate property where defendant used some separate property to acquire the land; it was titled as entireties property; and defendant presented no evidence to rebut the presumption that defendant intended a gift to the marital estate.

**Am Jur 2d, Divorce and Separation §§ 880, 888.**

4. **Divorce and Alimony § 30 (NCI3d)— presumption of gift to marital estate—burden of rebuttal on defendant**

A deed to certain property which named as grantees defendant's partner and his wife and defendant and plaintiff as husband and wife created in the couples tenancies by the entirety, and the trial court erred in finding that plaintiff received this property as a tenant in common; therefore, the gift presumption arose, and the trial court's finding that plaintiff never introduced any evidence that the buying and selling of the real property was ever intended to be a part of the parties' marital estate was irrelevant, as defendant had the burden of showing that no gift was intended at the time of the conveyance.

**Am Jur 2d, Divorce and Separation §§ 880, 888.**

LAWRENCE v. LAWRENCE

[100 N.C. App. 1 (1990)]

5. **Divorce and Alimony § 30 (NCI3d) — partnership during marriage — classification of partnership property**

Since the Court of Appeals has previously held that a spouse's interest in a professional partnership may be marital property, it is uncontradicted that defendant's partnership with his uncle existed during the parties' marriage, and the trial court erred in classifying some of the partnership property, the case is remanded for a reclassification of defendant's share of the partnership's property.

Am Jur 2d, Divorce and Separation § 899.

6. **Divorce and Alimony § 30 (NCI3d) — investment trust — part marital and part separate property — findings proper — award of full value to defendant improper**

Where there was some evidence to support the trial court's finding that 61.8% of an investment trust was separate property and the remaining 38.2% was marital property, the court's finding is binding on appeal, but the trial court erred in awarding the full value of the investment trust to defendant.

Am Jur 2d, Divorce and Separation § 889.

7. **Divorce and Alimony § 30 (NCI3d) — education fund for children — court's imposition of trust in equitable distribution action improper**

The trial court was without authority to impose a trust for the benefit of the parties' children on an education fund established by the parties, to appoint the parties as trustees, and to order that the children pay income taxes due on the fund, since only marital property is subject to distribution by the court in an equitable distribution proceeding, and the children were not parties to the action subject to the court's jurisdiction.

Am Jur 2d, Divorce and Separation § 1045.

8. **Divorce and Alimony § 30 (NCI3d) — equitable distribution action — conversion of marital funds by plaintiff during marriage — finding improper**

The trial court erred in determining that plaintiff had converted certain marital funds to her own use during the marriage and in treating the allegedly converted funds as part of the marital estate in making its equitable distribution order,

LAWRENCE v. LAWRENCE

[100 N.C. App. 1 (1990)]

since property is not part of the marital estate unless it is owned by the parties on the date of separation, and defendant did not prove that any of this money was used to purchase assets which were owned by either of the parties on the date of separation.

**Am Jur 2d, Divorce and Separation § 892.**

Judge GREENE concurs in the result.

APPEAL by plaintiff from judgment entered 18 April 1989 by *Judge Clarence W. Carter* in SURRY County District Court. Heard in the Court of Appeals 11 April 1990.

This is an equitable distribution action. Plaintiff argues that the trial court erred in its classification of marital and separate property. Defendant inherited various tracts of land and some money, both before and after the marriage, and then bought or traded inherited real estate and money for other tracts of land. Additionally, some portions of the other tracts' purchase prices were paid with funds that were marital property. The real property acquired was titled in both spouses' names. The trial court found that the majority of the real property was the husband's separate property since it was purchased with separate property and the husband testified he did not intend to make a gift to the plaintiff. The court also classified some certificates of deposit as non-marital property but then purported to impose an "education trust" on the funds. Additionally, the court found that during the parties' twenty-year marriage plaintiff had withdrawn in excess of $53,000 from the parties' joint bank accounts without accounting for that money. The court used this finding as a distributional factor. Plaintiff appeals.

*Davis & Harwell, by Fred R. Harwell, Jr., for plaintiff-appellant.*

*Franklin Smith for defendant-appellee.*

EAGLES, Judge.

Plaintiff argues that the trial court erred in a number of respects. First, plaintiff argues that the trial court's classification of certain property as the husband's separate property was error. Second, plaintiff asserts that the trial court erred in placing certain funds in trust for the parties' children and appointing the parties trustees. Additionally, plaintiff asserts that the trial court erred in finding that she converted marital property to her own use during the

marriage and in considering that alleged conversion as a distributional factor. Finally, plaintiff argues that the trial court erred in failing to classify and distribute certain bank accounts held by the parties on the date of separation. For the reasons stated below, the order of the trial court is affirmed in part, reversed in part and remanded.

## I. Classification of Property.

The first step in the equitable distribution process is the classification of the parties' property as marital property or separate property. G.S. 50-20(a). Plaintiff first argues that the trial court erred and abused its discretion in classifying portions of four parcels of real property and an interest in an investment trust as defendant's separate property. We agree in part and find that the trial court erred in its classification of the 8.6 acres in Mount Airy, the Mitchell County property, the 56.6 acres in Surry County and the Eads/Highway 601 property as separate property. However, we overrule plaintiff's assignment of error regarding the classification of 61.8% of the investment trust as separate property.

A. Industrial Park; 8.6 acres in Mount Airy.

[1] Plaintiff excepts to the following portion of finding of fact number 5:

> That on August 13, 1969, the Defendant withdrew from Workmen's Federal Savings and Loan the sum of $5,000.00 and used this said money to purchase the remaining one-half undivided interest in the 8.6 acres that he received by will from his grandmother's estate from his Uncle Claude Lawrence. That in addition to the one-half undivided interest in the 8.6 acres the Defendant received from his grandmother's estate $1,200.00 in cash. The evidence showed by way of final accounting that this property was distributed to the Defendant on October 1, 1965. This money was deposited in the Defendant's own savings account in the United Savings and Loan in Mount Airy, North Carolina. That the evidence further showed that the Defendant maintained the 8.6 acres as his own separate property and that he sold the tobacco poundage off this tract of land to an individual by the name of Guy Coe for the amount of $1,194.00.

The trial court concluded that this 8.6 acre tract is defendant's separate property, apparently based on a source of funds rationale,

LAWRENCE v. LAWRENCE

[100 N.C. App. 1 (1990)]

and "[t]hat the evidence is clear, cogent and convincing that the Defendant never intended to make a gift of any portion of this property to the Plaintiff[.]"

Plaintiff argues that the trial court erred in determining that the 8.6 acre tract is defendant's separate property since the deed for this land names "Kermit W. Lawrence, Jr., and wife, Mary M. Lawrence" as the grantees. Plaintiff relies on G.S. 39-13.6(b) in arguing that a deed naming a man and wife as grantees vests title in the two as tenants by the entireties. Plaintiff's reliance is misplaced in this instance. G.S. 39-13.6 did not become effective until 1983, while the deed in question was executed on 13 August 1969. The common law rule governs this deed transfer. In general at common law a conveyance to husband and wife creates an estate by the entirety. However, where tenants in common partition a joint estate and convey a portion of the land to a cotenant of the tenancy in common and his or her spouse (who was not a cotenant), no estate by the entirety is created and the spouse does not acquire any title. See Smith v. Smith, 248 N.C. 194, 198-99, 102 S.E.2d 868, 871 (1958).

The deed conveying the 8.6 acres to plaintiff and defendant provides that the grantors, acting as tenants in common, agreed that 8.6 acres of the grantors' lands were Claude H. Lawrence and defendant's "fair part of the real property devised to the [grantors and grantees]." Thereafter, the deed recites that Claude H. Lawrence "desires to sell his part of the [8.6 acres] to Kermit W. Lawrence, Jr." Our reading of the deed leads us to the conclusion that defendant received one one-half interest in the 8.6 acres by a partition deed between tenants in common. Therefore, the deed did not create a tenancy by the entirety in the first one-half interest in the 8.6 acres. However, the second one-half interest received from Claude H. Lawrence was not conveyed by partition deed between tenants in common. The deed unambiguously states that Claude H. Lawrence conveyed his one-half interest in the 8.6 acres to defendant. Because plaintiff and defendant, as husband and wife, were both named grantees in this conveyance, the second one-half interest in the 8.6 acres is held by them as tenants by the entirety. Defendant bears the burden of showing by clear, cogent and convincing evidence that no gift to the marital estate was intended at the time of the conveyance. Defendant's only evidence regarding the 8.6 acres, other than the deed itself, was his testimony that he spent inherited, separate funds to purchase

and improve the property and that he sold the tobacco allotment on the property. We remand for a determination of whether there is clear, cogent and convincing evidence, sufficient to rebut the gift presumption.

Parenthetically, we note that defendant relies on G.S. 39-13.5 to argue that because the deed did not contain the required statement of intent, it could not create a tenancy by the entirety. Defendant's reliance is also misplaced. G.S. 39-13.5 became effective 1 October 1969 while the deed here was executed on 13 August 1969.

B. Mitchell County Property.

[2] Plaintiff excepts to finding of fact number 6 which states:

That the Defendant used portions of money from his own savings account which had been willed, devised and bequeathed to him by his father and grandmother to purchase his aunt Georgia Buchanan's one-sixth undivided interest in the 36 acre tract in Mitchell County, North Carolina on December 18, 1970. The purchase price was withdrawn from the Workmen's Federal Savings and Loan account in the amount of $600.00. He also purchase[d] another one-sixth undivided interest in the same tract from his aunt Betty Morgan; that he withdrew the purchase price of $600.00 from his own savings account at the Northwestern Bank in Dobson, North Carolina (originally the Surry County Loan and Trust Company). That he also purchased from his aunt Jessie McKinney a one-sixth undivided interest in the same tract in Mitchell County in the amount of $600.00. That the money was withdrawn from his own savings account at the Northwestern Bank in Dobson, North Carolina. That the Defendant later traded his four-sixths undivided interest in the 36 acre tract of land in Penland, Mitchell County, North Carolina to his Aunt Betty Morgan for a 24 acre tract located on Conley Ridge Road, Penland, Mitchell County, North Carolina. This transaction was August 14, 1981, exhibit 10(a) and 10(b) of Defendant's Exhibit 23 introduced into evidence at the trial. That the defendant also traded his one-sixth undivided interest in the 1.5 acres deeded to him by his father on the 10th day of October, 1971 to his aunt Betty Morgan in Mitchell County, North Carolina for a 2.14 acre tract located and situated on Conley Ridge Road in Penland, Mitchell County, North Carolina and adjoining the 24 acre tract that he acquired from his aunt Betty Morgan. That the

Defendant retains approximately 13% undivided interest in the remaining 1.5 acre where the house is located and situated thereon. This house is presently occupied by the Defendant's aunt Betty Morgan. That even though some of these deeds were received by the Defendant with the Plaintiff's name thereon as tenants by the entirety that no monies were ever spent to acquire any of the tracts of property in Mitchell County in the names of the parties except the monies that the Defendant received by will from his father and his grandmother. This property is ancestral property and has been in the Defendant's maternal ancestry for over 100 years. The Court further finds that when the Plaintiff took an appraiser to these tracts of land for an appraisal to be made in Mitchell County to testify in this cause, the Plaintiff did not know where the 24 acres or the 2.14 acres were located on Conley Ridge Road. That the Defendant testified that at no time did he ever intend to make a gift of any of these deeds to the Mitchell County property to his wife. That the Plaintiff did not testify that she understood that the Defendant intended to make her a gift of the Mitchell County property. The Court finds that the evidence is clear, cogent and convincing and of sufficient weight to rebut the presumption of gift created by the deeds being in the form of tenants by the entirety.

The trial court concluded that "all of the real property located in Mitchell County" is defendant's separate property. Plaintiff argues that the trial court erred in its reasoning regarding the presumption of gift to the marriage. We agree that the trial court erred in relying on certain facts to classify the property as separate property.

The deed to the 24 acre tract in Mitchell County names as grantees "Kermit W. Lawrence, Jr. and wife, Mary Mills Lawrence." "If a spouse uses separate funds to acquire property titled by the entireties, the presumption is that a gift of those separate funds was made, and the statute's interspousal gift provision applies." *McLean v. McLean*, 323 N.C. 543, 552, 374 S.E.2d 376, 382 (1988). The trial court erred by relying on defendant's use of separate property to purchase the 24 acre tract to rebut the presumption of a gift to the marital estate. Additionally, the findings that this property was "ancestral," that plaintiff did not know its location and her lack of testimony that she understood that defendant in-

LAWRENCE v. LAWRENCE

[100 N.C. App. 1 (1990)]

tended to make a gift are irrelevant to the issue of whether this property is marital property.

The remaining basis for the trial court's determination that the gift presumption was rebutted is defendant's testimony that he did not intend to make a gift to his wife. "Whether defendant succeeded in rebutting the presumption of gift to the marital estate by clear, cogent and convincing evidence is a matter left to the trial court's discretion." *McLean v. McLean*, 88 N.C. App. 285, 290, 363 S.E.2d 95, 98-99 (1987), *aff'd*, 323 N.C. 543, 374 S.E.2d 376 (1988). The general rule is that "[u]pon appellate review of a case heard without a jury the trial court's findings of fact are conclusive on appeal if there is evidence to support them. . . ." *Draughon v. Draughon*, 82 N.C. App. 738, 740, 347 S.E.2d 871, 872 (1986), *cert. denied*, 319 N.C. 103, 353 S.E.2d 107 (1987). Although the trial court here found as a fact that defendant had rebutted the gift presumption, the court erred in relying on evidence that has no bearing on the issue. Accordingly, we remand to the trial court for a determination whether defendant's relevant evidence was sufficiently clear, cogent and convincing to rebut the gift presumption. We note that this court has affirmed findings that property is marital even though a donor spouse testified that a gift was not intended. *See Thompson v. Thompson*, 93 N.C. App. 229, 232, 377 S.E.2d 767, 768-69 (1989) (trial court did not err in determining that parties' home was marital property where only competent evidence that a gift was not intended was donor's testimony); *Draughon*, 82 N.C. App. at 739-40, 347 S.E.2d at 872 (although donor spouse testified that she did not intend a gift there was evidence to support trial court's finding that the property was marital).

C. Surry County Farm; 56.6 acres in Mount Airy.

[3] Plaintiff assigns as error finding of fact number 7 which states:

That on December 21, 1972, the Defendant purchased 56.6 acre[s] of land located in Mount Airy Township for a purchase price of $25,000.00. The Defendant made a down payment of $5,000.00. That this $5,000.00 down payment came from the following sources: $965.19 withdrawn from the Defendant's own savings account at Workmen's Federal Savings and Loan; he withdrew from his own savings account at United Savings and Loan $1,737.14 and the remainder of the $5,000.00 down payment was withdrawn from the Northwestern Bank in Dobson,

North Carolina. That these withdrawals took place on December 12, 1972. The said withdrawals are shown as item 9 of Defendant's Exhibit 23. That the total purchase price including principal and interest for said farm at the time it was paid off amounted to $29,200.00[.] That the $5,000.00 of the $29,200.00 was paid for from the Defendant's own savings accounts which was [sic] devised to him by his father and grandmother. That approximately 1.37 acres was surveyed off the 56.6 acre tract. That a note and deed of trust was [sic] executed to the Workmen's Federal Savings and Loan on the 1.37 acres by the parties for the sum of $25,000.00. This money was used to build the house which the parties lived in for several years prior to their separation which the Plaintiff and the youngest [sic] child are living in at the present time. That the balance due on the note and deed of trust at Workmen's Federal Savings and Loan as of the date of the separation on September 18, 1986 is $15,724.00.

The trial court also found, in finding number 13, that the "original purchase price" was paid in the following manner: $5,000 from defendant's own savings account, $15,540 from payments received from Hardee's of Lincolnton (apparently from the sale of the Eads property) and $8,660 from monies earned during the marriage. Therefore, the court concluded that 70.3% of the tract was separate property and 29.7% was marital. We agree with plaintiff's argument and hold that the trial court erred in determining that any portion of this property was separate property.

As we stated previously, when a spouse uses separate property (which includes proceeds from separate property) to acquire property that is titled as entireties property, a gift to the marriage is presumed. *McLean*, 323 N.C. at 552, 374 S.E.2d at 381. Here, the deed to the parties lists as grantees "Kermit W. Lawrence, Jr. and his wife, Mary Mills Lawrence." This creates a tenancy by the entireties. Defendant presented no evidence to rebut the presumption that defendant intended a gift to the marital estate. Therefore, the trial court erred in using a source of funds approach to determine what portion of the 56.6 acre tract was marital property as opposed to separate property. The source of funds analysis is not applicable until the donor spouse has rebutted the gift presumption by clear, cogent and convincing evidence. *Id.* at 552, 374 S.E.2d at 382.

LAWRENCE v. LAWRENCE

[100 N.C. App. 1 (1990)]

D. Eads/Highway 601 Property.

[4] Plaintiff also assigns as error the following portions of findings of fact number 9 and 10:

9. . . . The partners [defendant and his uncle Romey Sawyers] bought several lots with houses located and situated thereon on both sides of Highway 601 a short distance from where said highway intersects with Highway 52, a total purchase price for all the real property purchased was $40,000.00. . . . That the partners paid $12,000.00 down payment on the $40,000.00 purchase price. That the Defendant-partner's share was withdrawn from the Northwestern Bank in Dobson, North Carolina from the account in his own name which he was willed, devised and bequeathed by his father and grandmother the sum of $6,000.00. That this withdrawal and conveyance is referred to in Defendant's Exhibit 23 admitted into evidence and referred to in the chart which is a part of Exhibit 23 as the Eads property. The partners rented the houses, collected the rents and used these monies to pay on the remaining $28,000.00 owed. That in addition to the rents which were applied to the principal and interest of the remaining balance on the note, the partners had to pay $1,700.00 additional monies—the defendant paid his share in the amount of $850.00 which was withdrawn from the Northwestern Bank in Dobson, North Carolina from his own individual account and this withdrawal took place on or about September 4, 1968. That on August 5, 1972, the partners sold to the Hardee's Food Chain of Lincolnton, North Carolina a lot on the north side of Highway 601 for the sum of $57,000.00. That each partner received $28,500.00 as their share. That these monies were to be paid in the following manner: Hardee's made a down payment on the purchase price of $15,000.00. That the partners acting in their individual capacity took the $15,000.00 and paid off the remaining balance on the note and deed of trust which secured the purchase price of the property on September 6, 1967. That there remained a balance owned [sic] by Hardee's of Lincolnton on the original purchase price $42,000.00 with an annual interest rate of 6%, owing to each of the partners the amount of $21,000.00. These payments have been paid in full, the last payment being made by Hardee's to the partners in 1982. On September 18, 1984, the Defendant and his partner Romey Sawyers acting in their capacity as partners, sold to

the Workmen's Federal Savings and Loan a certain portion of the land referred to as the Eads property located on the south side of Highway 601 for the sum of $50,000.00. That Workmen's Federal Savings and Loan paid to the partners a $10,000.00 down payment—$5,000.00 to each partner with the remaining balance to be paid in ten (10) payments to each partner at the rate of 10% interest on the outstanding balance. . . .

10. That during the course of the existence of the partnership both of the partners' wives received deeds in their names as tenants in common and signed deeds to Hardee's of Lincolnton and to the Workmen's Federal Savings and Loan in Mount Airy, North Carolina. That all of the funds paid for the property and received from the sales of the property were never common-mingled [sic] with the Plaintiff and Defendant's own marital assets. That the evidence is clear, cogent and convincing that this was a business transaction between the Defendant and his uncle Romey Sawyers and that their wives only signed the deeds because the buyers and their attorneys required them to do so. That the Defendant never intended to make a gift of this property to the marital estate. That the partners filed partnership tax returns each year which showed the debts and the income acquired and received by the partnership and that the Plaintiff never introduced any evidence that the buying and selling of the real property was ever intended to be a part of the Plaintiff and Defendant's marital estate. That the Defendant testified that all the transactions involving the Eads property was [sic] the result of the acts of the partnership alone and that neither partner ever intended to make a gift of any of the property, be it real or personal or cash, to either of their wives. That the evidence is clear, cogent and convincing that the Defendant never intended to make a gift of any of the property on Highway 601 in Surry County, North Carolina to the marital estate; that he intended for the property to be owned by the partnership and any income derived from the management and sale of said property was to be the separate property of each of the partners. That the Defendant introduced evidence which was clear, cogent and convincing to the Court which was of sufficient weight to overcome any presumption of gift to the marital estate of any of the real property bought and sold on the north and south side[s] of Highway

601, commonly referred to as the Eads property, sold to Hardee's of Lincolnton and Workmen's Federal Savings and Loan in Mount Airy, North Carolina.

The trial court concluded that the "Eads property," defendant's partnership interest and any proceeds from them were the defendant's separate property. We agree with plaintiff's argument that the trial court erred in relying on certain facts to classify this property as separate property.

The deed to the Eads property, which consists of two tracts of land, one on either side of Highway 601, names as grantees "Romey Sawyers and wife, Ruth Sawyers, and Kermit W. Lawrence, Jr., and wife, Mary Jo Lawrence." The trial court's finding that plaintiff received this property as a tenant in common is clearly erroneous. A deed naming a person and his or her spouse as the grantees creates in them a tenancy by the entireties, *Freeze v. Congleton*, 276 N.C. 178, 181, 171 S.E.2d 424, 426 (1970), even where the husband and wife are not the only grantees. *See Hartman v. Hartman*, 82 N.C. App. 167, 181, 346 S.E.2d 196, 204 (1986), *aff'd*, 319 N.C. 396, 354 S.E.2d 239 (1987). Therefore, the gift presumption arises. The trial court's finding that "Plaintiff never introduced any evidence that the buying and selling of the real property was ever intended to be a part of the Plaintiff and Defendant's marital estate" is irrelevant. Since the property was titled by the entireties, defendant (not plaintiff) has the burden of showing by clear, cogent and convincing evidence that no gift to the marital estate was intended at the time of the conveyance.

[5]   Additionally, we note that this court has previously held that a spouse's interest in a professional partnership may be marital property. *See Weaver v. Weaver*, 72 N.C. App. 409, 324 S.E.2d 915 (1985). The rationale behind the *Weaver* decision applies to the instant case. It is uncontradicted that the partnership here existed during the parties' marriage. "[A]ll real and personal property acquired by either spouse or both spouses during the course of the marriage" is marital property. G.S. 50-20(b)(1). Because of the errors in the trial court, we remand for a reclassification of defendant's share of the partnership's property.

E. Investment Trust.

[6]   Plaintiff argues that the trial court erred in determining that an investment trust was largely the separate property of the hus-

band. Plaintiff takes exception to the following portion of the trial court's finding of fact number 17:

> That the Defendant received by way of will from his father his father's interest in the Blue Ridge Investors Trust. . . . That at the time the parties were married, the Defendant's interest in the trust fund that he received by will from his father was worth $2,576.00. . . . That at the date of separation, the Defendant's interest in the trust fund was $35,966.00. This evidence was testified to by Hylton Wright, the President of the trust fund. That monies paid by the Defendant during the coverture of the marriage and the monies that he had invested in the trust fund prior to the marriage through and including the date of the separation and applying the verified growth percentage rate on a yearly basis to the trust fund is set out in the Defendant's Exhibit 23 [sic]. This computation shows that 38.2% of the $35,966.00 would be marital property and 61.8% would be separate property belonging to the Defendant. That the Court further finds that the Plaintiff never participated in the investment trust in any way and that the evidence as testified to before the Court is clear, cogent and convincing that the Defendant at no time ever intended to make a gift of the funds that he received from his father or the growth of those funds by and through investments over the years to the marital estate[.]

The trial court concluded that 61.8% of the trust was defendant's separate property and the remaining 38.2% was marital property but awarded the entire fund to defendant "as his separate property." The parties assert different sources of this property. Plaintiff asserts that the husband "bought into" the trust after his father died, while defendant alleges that he inherited his interest. Because there is some evidence in the record to support the trial court's finding that the husband inherited the interest, that finding is binding on appeal. Therefore, that portion of the trust which defendant inherited (and any passive appreciation of that portion) is the husband's separate property.

There is uncontradicted evidence that during the marriage the parties contributed $10 per month in marital funds to the trust. Therefore, some portion of this investment trust is marital property. The trial court determined that only 38.2% of defendant's interest in the trust was marital property. Although it is unclear

from the court's order, the court apparently relied on defendant's testimony and defendant's exhibit #23 regarding the annual growth of the fund. The trial court erred in relying on defendant's exhibit #23 since that exhibit was never offered or admitted into evidence. However, the statements from the investment trust were admitted into evidence by plaintiff and defendant testified that 61.8% of the fund was separate property and 38.2% of the fund was marital property. Defendant also gave a basis for his opinion. Since there is some evidence to support the court's finding, it is binding on appeal.

Plaintiff argues that the trial court erred in failing to use the formula from *Mishler v. Mishler*, 90 N.C. App. 72, 76, 367 S.E.2d 385, 387, *disc. rev. denied*, 323 N.C. 174, 373 S.E.2d 111 (1988). We find no merit to plaintiff's argument that the *Mishler* formula is the *only* reasonable basis to determine that portion of the fund which is marital property as opposed to separate property. However, the court erred in awarding the full value of the investment trust to defendant. Plaintiff is entitled to share in the distribution of the marital property portion of the investment trust. Accordingly, we remand for equitable distribution of the marital property portion of the investment trust.

## II. Education Trust for Children.

[7] Plaintiff also argues that the trial court erred in purporting to impose a trust for the benefit of the parties' children on an "education fund established by the parties," although the court determined the funds were not marital property. Plaintiff excepted to the following portion of finding number 12:

> The Plaintiff and Defendant agreed between themselves to place $20,000.00 of the said $35,000.00 [from the sale of an interest in a building supply business] into certificates of deposit at the Northwestern Bank in Dobson, North Carolina to be designated as the children's educational fund. . . . That while the Plaintiff was managing the family budget that she depleted these funds to an amount of approximately $21,000.00. . . . That an equal and equitable division of these funds between the two (2) sons as of February 7, 1988 plus any interest which the said account would draw from that date would be $9,989.36 plus any additional interest drawn to Kent William Lawrence and $14,593.61 plus any additional interest drawn to Keith Wilson Lawrence. The Court finds as a fact that the parties intended from the beginning and continuing through and to

the date of the separation that this property would be a gift to the children to provide funds to pay for their college education[s].

Based on this finding the trial court concluded that the monies in the educational fund belong to the parties' two children. The court appointed plaintiff and defendant as trustees and ordered that the children shall pay the income taxes due on the fund.

In an equitable distribution proceeding, only marital property is subject to distribution by the court. G.S. 50-20(a). Therefore, the trial court was without authority to appoint the spouses as trustees of the fund. Further, the condition that the funds would be distributed to the children only after they complete four years of college is a creation of the court and one for which the trial court had no authority. Additionally, because the children were not parties to this action, to the extent the trial court purports to order the children to pay taxes on the fund the court acted without authority. Any resolution of how the educational fund is to be administered is not one within the court's jurisdiction in an equitable distribution proceeding and the order in this respect is null and void.

III. Plaintiff's Conversion of Marital Property.

[8] Plaintiff argues that the trial court erred in determining that the plaintiff converted certain marital funds to her own use during the marriage and in treating the allegedly converted funds as part of the marital estate in making its equitable distribution order. Property is not part of the marital estate unless it is owned by the parties on the date of separation. G.S. 50-20(b). Defendant did not prove that any of this money was used to purchase assets that were owned by either of the parties on the date of separation. Therefore, the trial court erred in concluding that this money was marital property.

IV. Failure to Consider Defendant's Transfer of Funds.

Plaintiff also argues that the trial court erred in failing to classify, value and distribute the monies in certain bank accounts. Plaintiff argues that on the date of separation there were funds in accounts held in both parties' names. Additionally, plaintiff argues that the trial court erred in failing to consider defendant's dissipation of marital assets after the date of separation but before the date of distribution. Our review of the record shows that the trial

court considered each of the parties' accounts. Additionally, plaintiff has shown no abuse of discretion by the trial court in this regard. Plaintiff's assignment of error is overruled.

### V. Entry of Order.

Finally, plaintiff argues that the trial court erred in entering the order of equitable distribution. For the reasons stated above we agree with plaintiff's argument that the trial court erred.

In summary, we find that the trial court erred in classifying the 8.6 acres in Mount Airy, the Mitchell County property, the 56.6 acres in Surry County and the Eads/Highway 601 property as separate property. We affirm the court's classification of 61.8% of the investment trust as separate property, though we remand for equitable distribution of the 38.2% of the investment trust which is marital property. Additionally, to the extent the trial court's order attempted to resolve the administration of the educational fund belonging to the parties' children, the court's order is null and void. We also agree with plaintiff's argument that the trial court erred in concluding that certain money, allegedly converted by plaintiff to her own use during the marriage, was marital property. Plaintiff's argument that the trial court erred in failing to consider defendant's dissipation of assets is without merit. Accordingly, the order is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Judge WELLS concurs.

Judge GREENE concurs in the result.

Judge GREENE concurring in the result.

"When a spouse uses separate property in the acquisition of property titled by the entireties, a gift to the marital estate is presumed." *McLean v. McLean*, 323 N.C. 543, 555, 374 S.E.2d 376, 383 (1988); *McLeod v. McLeod*, 74 N.C. App. 144, 154, 327 S.E.2d 910, 917, *cert. denied*, 314 N.C. 331, 333 S.E.2d 488 (1985) (a marital gift is presumed when one spouse, "from separate property causes property to be conveyed to the other spouse in the form of tenancy by the entireties"). "This presumption is rebuttable only by clear, cogent and convincing evidence that a gift was not intended." *McLean*. Donor spouse has the burden of rebutting the presumption. *Id*. Whether donor spouse succeeds in rebutting the presump-

tion of gift to the marital estate by clear, cogent and convincing evidence remains "a matter left to the trial court's discretion." *Id.* (citation omitted).

The marital property presumption may be rebutted by the conveyance's inclusion of an "express statement of separate property intention." *Id.* Otherwise, evidence that a gift was not intended can be gathered from "circumstances which led to the execution" of the deed and the parties' action after execution of the deed. *See Szabo Food Service, Inc. v. Balentines, Inc.,* 285 N.C. 452, 462, 206 S.E.2d 242, 249 (1974). For example, evidence that the donor spouse continued to treat the property as his separate property after the conveyance is some evidence that he did not intend a gift. *See Waddell v. Carson,* 245 N.C. 669, 678, 97 S.E.2d 222, 229 (1957) (evidence that donor spouse paid taxes out of his salary was "competent for the jury to consider in arriving at plaintiff's intention at the time of the conveyance . . . tending to rebut the presumption of a gift of the property to his wife"). Competent evidence also includes evidence of the parties' intent, including the donor's intent, not to make a gift of the properties to the marital estate. Here, wife argues that the only competent evidence relating to intent is the parties' expression of intent at the time of conveyance. Wife's position is not supported in the law:

> For the truthfulness of the parties when upon the witness stand we must depend, as in the case of other witnesses, upon the obligation of their oath and their reputation for truth and veracity. If these can be relied upon for the truth of statements made in reference to acts and words of which the eye and ear may take notice, they may for the same reason be accepted as guarantees for the truth of statements made in respect to motives and intents of which the mind or inner man alone can take cognizance. Nor is there, in our judgment, any well-grounded reason for apprehending that this rule will obstruct rather than advance the ends of justice. There is no more danger of imposing upon the jury falsehood or pretense in respect of motives and intents than there is of doing the like in respect to visible or external circumstances. The jury can as readily distinguish between the false and true in respect to the former as to the latter. If the motive or intent assigned is inconsistent with the external circumstances, it must be discarded as false. If on the contrary they are consistent, there is no reason why they may not be true.

2 J. Wigmore, *Wigmore on Evidence* § 581 (3d ed. 1940); *see also Phifer v. Erwin*, 100 N.C. 59, 6 S.E. 672 (1888) (the court allowed a mortgagor to testify at trial that he had no intent to defraud); *State v. King*, 86 N.C. 603, 606 (1882), citing *Seymour v. Wilson*, 14 N.Y. 568 ("the assignor was allowed to say upon his examination [at trial] that it was not his purpose in making the conveyance to delay or defraud his creditors . . .").

I now apply these principles to the facts in this case.

### 8.6 Acre Tract

I agree with the majority that plaintiff-wife did not receive any *title* to defendant-husband's one-half interest in the 8.6 acre tract because he received it as a consequence of a partitioning proceeding among his fellow joint tenants. *See Smith v. Smith*, 248 N.C. 194, 102 S.E.2d 868 (1958). However, our inquiry does not end here. A separate question is whether husband's one-half interest represents separate or marital property. Because husband obtained the one-half interest by virtue of his grandmother's will, it qualifies as his separate property according to N.C.G.S. § 50-20(b)(2) (1982) (separate property includes property acquired by devise). Nonetheless, any *active* increase in this separate property must be classified as marital property. *Beightol v. Beightol*, 90 N.C. App. 58, 61, 367 S.E.2d 347, 349, *review denied*, 323 N.C. 171, 373 S.E.2d 104 (1988) (*passive* appreciation of separate property is not considered marital property).

The other one-half interest in the 8.6 acre tract which husband purchased with what appears to be his separate property is presumed to be marital property, since it was titled in the entireties. The question here is whether husband has offered clear, cogent and convincing evidence of his contrary intention sufficient to rebut the marital gift presumption. On this issue, the trial court determined that husband "maintained the 8.6 acres as his own separate property and that he sold the tobacco poundage off this tract of land to an individual by the name of Guy Coy for the amount of $1,194.00." These findings reflect some competent evidence that could support the trial judge's conclusion that husband did not intend to make a gift to the marital estate. It is some evidence that he continued to treat the property as his separate property after it was titled by the entireties. Factors significant to the court's determination would be whether proceeds from the tobacco allotment sale was maintained as husband's separate property or

if it was commingled with marital funds and the degree to which husband maintained the 8.6 acres as his separate property supported by his separate funds.

Accordingly, I join the majority in vacating the trial court's conclusion that the entire 8.6 acre tract is husband's separate property and would remand for a new determination of that issue based on the above analysis.

### Mitchell Property

I agree with the majority that the presumption of a marital gift cannot be rebutted by any of the following findings:

> This property is ancestral property and has been in the Defendant's maternal ancestry for over 100 years.
>
> . . .
>
> [W]hen the Plaintiff took an appraiser to these tracts of land for an appraisal to be made in Mitchell County to testify in this cause, the Plaintiff did not know where the 24 acres or the 2.14 acres were located on Conley Ridge Road.
>
> . . .
>
> That the Plaintiff did not testify that she understood that the Defendant intended to make her a gift of the Mitchell County property.

Furthermore, the fact that the properties were purchased with husband's separate property is immaterial.

However, the following finding is relevant and represents some evidence to support a conclusion that husband did not intend a marital gift:

> That the Defendant testified that at no time did he ever intend to make a gift of any of these deeds to the Mitchell County property to his wife.

Record evidence supports this finding. Husband testified in pertinent part:

> Q. All right now, did you at the time that her name was placed on the deed, did you intend to make her a gift of any portion of that land . . .
>
> A. No, sir.

Defendant's credibility as a witness was a matter for the trial judge to resolve, who obviously found this evidence credible. *See Draughon v. Draughon*, 82 N.C. App. 738, 347 S.E.2d 871, *review denied*, 319 N.C. 103, 353 S.E.2d 107 (1987). I note that the evidence here is substantially different from the evidence offered by donor spouse in the *Thompson* decision:

> Q. Mr. Thompson, was it your intent to have your former wife's name placed on the deed?
>
> A. No, and this is the reason I asked twice first.

*Thompson v. Thompson*, 93 N.C. App. 229, 232, 377 S.E.2d 767, 768 (1989). In the *Thompson* decision, this court noted that evidence that donor spouse did not intend to have his wife's name placed on the deed did "not rise to the level of clear, cogent and convincing evidence of defendant's intention not to make a gift to the marital estate." *Id.* Here, defendant gave direct testimony that he did not intend to make a gift to his wife, sufficient evidence in my opinion to support, but not require, the trial judge's conclusion that donor spouse did not intend to make a gift to the marital estate.

Nonetheless, I agree with the majority that because the trial judge obviously has relied on evidence that has no bearing on the issue of whether wife rebutted the marital gift presumption, this issue must be remanded to the trial judge for a new determination.

### Eads Property

I agree with the majority and its reasoning that the parties titled the property in such a manner so as to create a tenancy by the entireties, not a tenancy in common. Furthermore, I agree with the majority that husband had the burden of rebutting the marital gift presumption and, therefore, wife had no obligation to introduce, nor could she be penalized for failing to introduce, any evidence on this issue. However, some record evidence exists to support but not require a conclusion that husband rebutted the marital gift presumption, as reflected by the trial judge's finding:

> That all of the funds . . . received from the sales of the property were never common-mingled [sic] with the Plaintiff and Defendant's own marital assets.
>
> . . .

That the Defendant never intended to make a gift of this property to the marital estate.

. . .

That the Defendant testified that all the transactions involving the Eads property was [sic] the result of the acts of the partnership alone and that neither partner ever intended to make a gift of any of the property, be it real or personal or cash, to either of their wives.

Along with this evidence, the trial court relied on findings which clearly were not appropriate, and this issue must be remanded to the trial court for a new determination.

*Plaintiff's Conversion of Marital Property*

I disagree with any majority suggestion that the trial judge treated the allegedly converted funds, here $53,000.00, as part of the marital estate. The trial judge concluded as a matter of law:

that the Plaintiff converted to her own use the sum of $53,000.00[,] which is marital property which should be accounted for in the equitable distribution of the property between the parties.

However, in the distributional order it appears that the trial court considered the $53,000.00 conversion as a distributional factor:

The Court does not order the Plaintiff to account for any portion of the $53,000.00 that she withdrew from the joint savings account. The Court will take this into consideration in arriving at a just and equitable distribution of marital property acquired by the parties and the difference in the income of the parties as of the date of the separation. The Court in its discretion finds that this would be just and proper under the facts in this case.

In an equitable distribution proceeding, the trial judge properly considers evidence of actual dissipation of marital assets for non-marital purposes by either spouse in anticipation of separation as a distributional factor, pursuant to N.C.G.S. § 50-20(c)(12). *See Smith v. Smith*, 314 N.C. 80, 88, 331 S.E.2d 682, 687 (1985) ("the only fault or misconduct that is 'just and proper' under N.C.G.S. § 50-20(c)(12) is that which dissipates or reduces marital property for non-marital purposes").

However, the evidence here does not support a finding that wife converted marital funds for non-marital purposes. Therefore, the trial court erred in considering this as a factor in the marital estate distribution. Record evidence supports the trial judge's finding that there existed a joint savings and checking account into which husband deposited money each month and that wife "had control and managed the family budget without any interference or supervision" by husband. This evidence creates a presumption that husband consented to wife's use of the funds "for purposes of sustaining the family or enhancing its standard of living." *McClure v. McClure*, 64 N.C. App. 318, 323, 307 S.E.2d 212, 215, *review denied*, 310 N.C. 308, 312 S.E.2d 651 (1984). Thus, husband had the burden of offering clear and convincing evidence that he did not consent to wife's use of the funds and that the funds wife withdrew exceeded normal family expenses. *See Spence v. Jones*, 83 N.C. App. 8, 348 S.E.2d 819 (1986), *disapp. on other grounds*, *Armstrong v. Armstrong*, 322 N.C. 396, 368 S.E.2d 595 (1988). At best, husband's evidence shows that wife made withdrawals from the joint spousal account for which she did not account. This evidence is very similar to the evidence presented to this court in the *Spence* decision by which defendant "merely showed that the funds withdrawn exceeded the expenses of the family." Here, as in *Spence*, husband offered no evidence to show that wife made non-marital use of the funds and so did not offer clear and convincing evidence that wife withdrew the funds without husband's consent and used the funds for purposes other than sustaining the family.

*Distribution*

On remand, if the trial judge determines that the property titled in the entireties is marital property, the trial judge also must consider as a factor in determining an equitable distribution of the marital property the fact that husband contributed this property to the marital estate from his separate properties pursuant to N.C.G.S. § 50-20(c)(12); *Armstrong*, at 404, 368 S.E.2d at 600; *see* Lawrence J. Golden, *Equitable Distribution of Property* § 5.27 (1983) (the presumption of marital property provides flexibility to the trial court in fashioning an equitable award); § 8.20 (the means for acquiring marital property is an important factor in determining equitable distribution).