REBECCA W. ROMULUS, Plaintiff v. JOHN M. ROMULUS, Defendant

No. COA10-1453

(Filed 20 September 2011)

**1. Divorce—equitable distribution—marital property—post-separation appreciation**

The trial court's findings in an equitable distribution action supported its conclusion of law that the post separation appreciation of defendant's dental practice was divisible property. Essentially, the trial court found that it could not determine the cause of the postseparation increase in value and applied the statutory presumption that postseparation increases in the value of marital property are divisible.

**2. Divorce—equitable distribution—separate property—findings**

A conclusion of law in an equitable distribution case classifying real estate as separate property was remanded where there were no supporting findings as to the facts necessary for the determination, even though ample evidence was presented.

**3. Divorce—equitable distribution—separate property—testimony of donor**

The trial court erred by concluding in an equitable distribution case that certain real estate was plaintiff's separate property. The trial court should consider the credibility and weight of all the relevant evidence, including the testimonial evidence of the donor spouse as to her intent in conveying the separate property to the parties as tenants by the entireties. Any statement in *Warren v. Warren*, 175 N.C. App. 509, adopting a rule that the donor's testimony alone cannot satisfy the burden of rebutting the marital gift presumption was *obiter dicta*.

**4. Divorce—equitable distribution—rental income and losses**

There was sufficient evidence in an equitable distribution action to support the trial court's findings as to rental income and losses from certain property. The trial court's findings adequately addressed the issues raised.

**5. Divorce—alimony—illicit sexual behavior—doctrine of inclination and opportunity**

The trial court did not err when ruling on an alimony claim by finding that plaintiff had voluntarily participated in an act of illicit

sexual behavior as defined by N.C.G.S. § 50-16.1A(3)(a). Although more certain and clear evidence is required for proof of a sexual act in the criminal context, in alimony claims North Carolina has long endorsed proof of intercourse by the doctrine of inclination and opportunity, and there is no reason that this doctrine would not apply to illicit sexual behavior.

**6. Divorce—alimony—illicit sexual behavior—date of separation**

The trial court did not err in its findings or conclusions in determining the date the parties separated in an alimony action in which one party was found to have engaged in illicit sexual behavior.

**7. Attorney Fees—alimony—properly denied**

The trial court properly denied plaintiff's claim for attorney fees in an alimony action where the court properly denied the alimony claim.

**8. Divorce—alimony—equitable distribution—simultaneous hearing—distinct orders**

Any error in the trial court simultaneously hearing alimony and equitable distribution claims was invited by plaintiff and was not prejudicial to her. Even if the trial court heard all of the claims in one trial, the court entered two separate and distinct orders.

Appeal by plaintiff and defendant from a judgment entered 4 March 2010 and order entered 5 March 2010 by Judge Jeffrey Evan Noecker in District Court, New Hanover County. Heard in the Court of Appeals 8 June 2011.

*Jonathan McGirt, for plaintiff-appellee.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for defendant-appellant.*

STROUD, Judge.

The trial court entered a judgment and order addressing the claims and counterclaims of the parties regarding child support, alimony, equitable distribution, and attorney fees, all of which were tried in the same trial, conducted on 30 June 2009, 1-2 July 2009, 11 September 2009, and 9 October 2009. The trial court entered an order addressing only equitable distribution, and one day later the trial court entered an order addressing the other claims, including denial of plaintiff's claims for alimony and attorney fees. Defendant

**ROMULUS v. ROMULUS**

[215 N.C. App. 495 (2011)]

appealed and plaintiff cross-appealed from the order regarding equitable distribution and the order denying alimony for plaintiff. Defendant's appeal raises issues regarding classification of divisible and separate property, while plaintiff's appeal raises issues regarding marital misconduct as a bar to alimony. For the reasons as discussed below, we remand the equitable distribution order to the trial court for additional findings of fact and conclusions of law as to the Darlington Avenue property and otherwise affirm the equitable distribution order. As to the denial of alimony, we affirm the trial court's conclusion that plaintiff is barred from alimony by her uncondoned "illicit sexual behavior" during the marriage, despite the trial court's findings as to defendant's physical abuse of plaintiff and their children. Our legislature has decreed that even one fleeting incident of "illicit sexual behavior" by a dependent spouse automatically bars her from an alimony award, even if the supporting spouse has committed serious, indeed criminal, physical abuse, against his wife and children throughout the marriage, and we have no authority to question the legislature's wisdom in adopting this rule.

## I. Background

The parties were married on 27 August 1988 and separated on 1 July 2006. On 12 April 2007, Rebecca Romulus ("plaintiff") filed a complaint alleging claims for postseparation support, alimony, child custody, child support, and equitable distribution; on 27 April 2007, John Romulus ("defendant") filed his answer and counterclaims for child custody, child support, and equitable distribution. On 30 June 2009, the trial court began the hearing on equitable distribution, alimony, and child support, continuing on several additional dates and concluding the hearing on 9 October 2009. On 4 March 2010, the trial court entered an equitable distribution order which granted a distributive award to plaintiff of $629,840.00, payable over seven years in 84 monthly installments of $7,498.10. The next day, the trial court entered an order denying plaintiff's claim for alimony based upon her marital misconduct, denying plaintiff's claim for attorney fees arising from the alimony claim, and granting child support.

Defendant filed notice of appeal from the equitable distribution judgment and the order regarding alimony and child support on 31 March 2010. Plaintiff also filed a notice of appeal from the judgment and order on 9 April 2010. We will first address defendant's appeal as to the equitable distribution order and then plaintiff's cross-appeal as to the denial of alimony.

II. Defendant's appeal of equitable distribution judgment

A. Classification and valuation of marital and divisible property

[1] Defendant first argues that the trial court made several errors as to classification and valuation of divisible and marital property. Our standard of review as to these issues is well-settled: "[w]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Lee v. Lee*, 167 N.C. App. 250, 253, 605 S.E.2d 222, 224 (2004) (citation and quotation marks omitted). "While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable *de novo.*" *Id.* (citation omitted). We review the trial court's distribution of property for an abuse of discretion. *Embler v. Embler*, 159 N.C. App. 186, 187, 582 S.E.2d 628, 630 (2003) (citation omitted).

1. Post-separation appreciation of defendant's dental practice

Defendant argues that the "trial court erred as a matter of law in concluding the post-separation increase in value of [his] dental practice was a passive increase and, thus, divisible property." The trial court identified the dental practice as follows:

> Y. John H. Romulus, DDS, PA: This entity is Husband's dental practice. This asset was stipulated to be marital by the parties in the [pretrial order or "PTO"]. Husband and Wife each offered expert testimony on the issue of the valuation of this asset on the [date of separation or "DOS"] and on the [date of trial or "DOT"] value. R.F. Warwick, CPA, with RSM McGladry was Wife's expert on the issue of valuation and has substantial experience in valuation of professional practices. Husband's expert was Terry Smith, CPA.

After an extensive and detailed series of findings regarding the valuation of the dental practice, which are not contested in this appeal, the trial court made the following findings of fact as to classification and valuation of the dental practice:

> 2. Based on the foregoing, the Court finds that John M. Romulus, DDS, PA has a value of on the DOS of $983,558.00 and a value on the DOT of $1,284,555.00.

> 3. Post DOS Increase in Value: The statute (50-20(b)(4)(a)) sets out that the appreciation in the value of marital property occur-

ROMULUS v. ROMULUS

[215 N.C. App. 495 (2011)]

ring after the date of separation of the parties and prior to the date of distribution is divisible property subject to distribution by the Court in an equitable distribution judgment. As to the change in value of John M. Romulus, PA after the separation of the parties, the Court finds that such increase was passive and is thus divisible property. In support of this conclusion, the Court finds that Dr. Romulus' efforts to grow the business were essentially unchanged from DOS until DOT. The Defendant did not invest substantially more time working at his practice than on the DOS, and in fact continued to work "dentist's hours", which included taking at least one weekday afternoon out of the office or otherwise away from work. There was no evidence of other substantial efforts to grow the business by Dr. Romulus, by increasing advertising, adding new services, new patient recruitment, patient retention efforts or the like.

Even though Dr. Romulus undoubtedly actively worked in the business by going to the office and doing dentistry, that does not lead to the conclusion that the increase in value of his practice is active and his separate property. Take the example of a shopkeeper who runs a corner store. He works from Monday to Friday, 9am to 5pm. A 20 story residential complex is completed across the street and his receipts increase greatly. Contrast that situation with a similar shopkeeper who expands his hours to nights and weekends, increases advertising to capture new customers, and establishes a website offering online shopping and delivery. This shopkeeper sees a similar increase in receipts, without the benefit of the new apartment building across the street. Although both shopkeepers were actively involved in the business of running the store, the increase in the value of the business itself is passive in the first case and active in the other.

*Dr. Romulus has not presented sufficient evidence to rebut the presumption that the increase in value of marital property post separation is divisible property, and thus such increase will be classified as divisible property and distributed as set out in this order.*

4. This asset is assigned to Husband at the DOS value of $983,558.00. The increase in value from DOS until DOT is passive as indicated above, and is thus divisible property assigned to the Husband at a DOT value of $300,997.00.

(Emphasis added). The trial court also made the following related conclusions of law:

3. The marital assets and debts, the fair market value of each on the DOS, and the divisible property are as set out in the paragraphs above and they are incorporated herein by reference.

4. The increase in value of the Husband's dental practice was passive and therefore divisible property.

We first note that the findings of fact above actually include the conclusion of law that the post-separation appreciation of the dental practice is divisible property. "Because the classification of property in an equitable distribution proceeding requires the application of legal principles, this determination is most appropriately considered a conclusion of law." *Hunt v. Hunt*, 112 N.C. App. 722, 729, 436 S.E.2d 856, 861 (1993). We will therefore review this determination as a conclusion of law *de novo. See Lee*, 167 N.C. App. at 253, 605 S.E.2d at 224. Defendant does not challenge the sufficiency of the evidence to support the portions of the findings of fact quoted above which are actually facts, as to the nature and extent of defendant's work in the dental practice before and after the date of separation.

N.C. Gen. Stat. § 50-20(b)(4)a (2009) defines "divisible property" as:

all real and personal property as set forth below:

a. All appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, except that appreciation or diminution in value which is the result of post-separation actions or activities of a spouse shall not be treated as divisible property.

Defendant argues that since the trial court found that defendant continued to be actively involved in the dental practice after the date of separation, that any increase in the value of the business must also be appreciation "which is the result of postseparation actions or activities[.]" *See id.* Defendant contends that

the trial court had to concede "Dr. Romulus undoubtedly actively worked in the business . . . ." . . . Nevertheless, the trial court determined the increase in the business value was passive because [defendant] had not *increased* his active involvement in the practice or substantially increased his marketing of the practice. This was error. The test is not whether there has been *increased* active involvement, but rather whether the increase is the result of active involvement. The fact, as found by the trial court, [defendant] continued to work actively in his

ROMULUS v. ROMULUS

[215 N.C. App. 495 (2011)]

dental practice—maintaining the same consistent effort which built a dental practice with a net value of over $900,000 (as found by the trial court) in July 2006, which then jumped 25% in value after the date of separation to over $1.2 million—precludes a conclusion the increase in value of his dental practice was passive. [*Lawing v. Lawing*, 81 N.C. App. 159, 176, 344 S.E.2d 100, 112 (1986)].

Defendant also argues that the trial court's hypothetical regarding a shopkeeper is "wholly inapplicable" and "logically flawed[,]" as some of the facts therein are not applicable or analogous to defendant's practice.

Plaintiff responds that defendant's argument is flawed both procedurally and substantively. Procedurally, plaintiff argues that defendant simply failed to meet his burden of proof to overcome the statutory presumption that the postseparation appreciation is divisible. This Court has determined that

[u]nder the plain language of [N.C. Gen. Stat. § 50-20(b)(4)a], all appreciation and diminution in value of marital and divisible property is presumed to be divisible property *unless* the trial court finds that the change in value is attributable to the post-separation actions of one spouse. Where the trial court is unable to determine whether the change in value of marital property is attributable to the actions of one spouse, this presumption has not been rebutted and must control.

*Wirth v. Wirth*, 193 N.C. App. 657, 661, 668 S.E.2d 603, 607 (2008) (citation omitted). As noted by plaintiff, this Court in *Wirth*, "identified the 'unless' clause of Subsection 50-20(b)(4)(a) to be a rebuttable presumption, with the burden of overcoming the presumption placed on the party seeking to show that the postseparation appreciation/increase (or diminution/decrease) was the result of 'postseparation actions or activities' of a spouse[.]". Substantively, plaintiff argues that defendant has "fail[ed] to apply the complete statutory test[,]" explaining that although defendant may have presented evidence as to his postseparation "actions or activities[,]" he has not proven that the increase in value was attributable to these activities. Essentially, plaintiff contends that defendant failed to prove causation: that it is more likely than not that the increase in value was *caused by* his post-separation actions or activities.

We agree with plaintiff that this case is governed by the statutory presumption that the post-separation increase in value of marital

property is divisible as set forth in *Wirth*. Regardless of the useful-
ness of the "hypothetical" set forth in the findings of fact, the opera-
tive portion of the finding—which as we have noted is actually a
conclusion of law—is that "Dr. Romulus has not presented sufficient
evidence to rebut the presumption that the increase in value of mari-
tal property post separation is divisible property, and thus such
increase will be classified as divisible property and distributed as set
out in this order." There is no dispute that the dental practice prior to
the date of separation is marital property. Based upon the statutory
presumption that post-separation appreciation to marital property is
divisible, defendant had the burden of proof to rebut this presump-
tion for the trial court to be able to find that the postseparation appre-
ciation in the dental practice was defendant's separate property. The
trial court is the sole judge of the weight and credibility of the evi-
dence. *See Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25
(1994) (noting that "it is within the trial court's discretion to deter-
mine the weight and credibility that should be given to all evidence
that is presented during the trial."). The trial court's findings of fact
as to the valuation of the dental practice and defendant's work in the
dental practice are unchallenged. Although we review the trial court's
conclusions of law *de novo*, we cannot reweigh the evidence and
credibility of the witnesses. Essentially, the trial court found that it
could not determine the cause of the postseparation increase in
value, and because of the statutory presumption, it must be consid-
ered divisible. We also note, although we have not quoted the exten-
sive findings of fact about valuation of the dental practice as they are
not directly relevant to the issues raised on appeal, the trial court did
find the valuation methodology and evidence as presented by plaintiff
to be more credible than that presented by defendant,[1] and the trial
court's determination of the dental practice's value and increase in
value postseparation is clearly a part of the trial court's rationale for
its conclusion that defendant did not meet the burden of proof to
rebut the presumption of divisible appreciation. The trial court's find-
ings of fact support its conclusion of law that the postseparation
appreciation of the dental practice is divisible property, so defend-
ant's first argument is without merit.

---

1. The trial court specifically found that "the Wife's expert had more credibility
than the Husband's expert" and "adopt[ed] Wife's evidence regarding the business val-
uation with the following exceptions[,]" which were an adjustment to the capitaliza-
tion rate and use of the weighted average of net income instead of the simple average.

## 2. Darlington Avenue property classification

**[2]** Defendant next argues that the "trial court erred as a matter of law in classifying the Darlington Avenue property as plaintiff's separate property" in finding of fact 6 (L.). Defendant contends that the Darlington Avenue house was "obtained through a property exchange using the 717 Mercer Avenue house, which Plaintiff owned prior to the marriage" and was "held by both parties in the entireties as husband and wife." N.C. Gen. Stat. § 50-20(b)(2) defines "separate property" as follows:

> (2) "Separate property" means all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage. However, property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance. Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance.

Defendant accurately summarizes the law applicable to classification of this property as follows:

> "When previously separate real property becomes titled by the entireties, the law presumes the transfer to be a gift to the marital estate." Warren v. Warren, 175 N.C. App. 509, 513, 623 S.E.2d 800, 802-803 (2006) (citing McLean v. McLean, 323 N.C. 543, 551-52, 374 S.E.2d 376, 381-82 (1988) and 3 Suzanne Reynolds, Lee's North Carolina Family Law § 12.33, at 12-100 (5th ed. 2002) ("The [marital gift] presumption applies in all instances when the spouses cause title to real property, or an interest in real property, to be in the entireties. The presumption applies when one spouse conveys to the other spouse in the entireties and when, because of a purchase, third parties convey to the spouses in the entireties.")). "This presumption may be rebutted only by clear, cogent, and convincing evidence that there was no donative intent to make a gift to the marriage on the part of the alleged donor spouse." Id.
>
> The same is true where real property is purchased using separate funds: "This Court, in previously construing G.S. sec. 50-20(b) (2), has determined that 'where a spouse furnishing

consideration from separate property causes property to be conveyed to the other spouse in the form of tenancy by the entireties, a presumption of a gift of separate property to the marital estate arises, which is rebuttable by clear, cogent, and convincing evidence.' " Thompson v. Thompson, 93 N.C. App. 229, 231, 377 S.E.2d 767, 768 (1989) (quoting McLeod v. McLeod, 74 N.C. App. 144, 154, 327 S.E.2d 910, 916-17 (1985))

The trial court's findings of fact and conclusions of law as to the Darlington Avenue property, in their entirety,[2] are as follows:

L. 73 Darlington Avenue, Wilmington. N.C.: This asset is Wife's separate property however it is encumbered by a Promissory Note payable to Herbert Fisher on the DOS in the amount of $176,000.00 and on the DOT in the amount of $149,252.00, which debt the Court finds to be marital debt. This is a debt that was incurred by the parties during the course of the marriage but in fact, encumbers Wife's separate property. The Court assigns this marital debt to the Wife.

The trial court made the following conclusion of law, covering all of the items of separate property identified in the findings of fact, including the Darlington Avenue:

5. The separate property of each of the Parties is set out and valued in the paragraphs above and they are incorporated herein by reference as if fully set out.

As noted above, the classification of property is actually a conclusion of law, not a finding of fact, and we will therefore review the trial court's classification of the Darlington Avenue property *de novo*. *See Hunt*, 112 N.C. App. at 729, 436 S.E.2d at 861.

Plaintiff acknowledges that the trial court's "finding of fact/conclusion of law might leave something to be desired in several respects" but argues that this "does not mean that Paragraph 6(L) is either factually incorrect or legally unsustainable." The arguments of both parties focus on whether the presumption of a gift to the marital estate which arises from titling the property as tenants by the

2. The order also incorporated the provisions of the Pretrial Order "filed on June 30, 2009" "as if fully set forth in this Order" but this order does not add any findings which may assist in classification. The Pretrial Order states that the Darlington Avenue property is titled "Jt[,]" or jointly, although it does not state that it is titled as tenants by the entirety. The parties agreed on the value of the property as of the DOS and DOT but disagreed as to the classification of the property.

entireties may be rebutted solely by the testimony of the donor-spouse. Yet we must first consider whether the trial court's findings of fact are sufficient to support its conclusion of law that the Darlington Avenue property is plaintiff's separate property. This is the simple part of our analysis, as the trial court actually made *no* findings of fact which could support the classification of the Darlington Avenue property as either marital or separate property. Essentially, the trial court made a finding of fact as to the valuation and the debt associated with the house, facts which were agreed upon by the parties, but only a conclusion of law as to the contested issue, the classification of the Darlington Avenue property as separate or marital property. The order contains no finding as to the facts necessary for the determination of whether the property is marital or separate such as when it was acquired, how it was acquired, or even how it was titled. Although ample evidence was presented on all of these facts, the trial court did not make the findings. To support the conclusion of law that the Darlington Avenue property is separate, the trial court must make "specific findings of the ultimate facts established by the evidence, admissions, and stipulations that are determinative of the questions involved in the action and essential to support the conclusions of law reached." *Plott v. Plott*, 313 N.C. 63, 74, 326 S.E.2d 863, 870 (1985) (citation omitted). Although the trial court need not and should not recite all of the evidence, "[t]he purpose for the requirement of specific findings of fact that support the court's conclusion of law is to permit the appellate court on review to determine from the record whether the judgment—and the legal conclusions that underlie it—represent a correct application of the law." *Patton v. Patton*, 318 N.C. 404, 406, 348 S.E.2d 593, 595 (1986) (citation and quotation marks omitted). We therefore find that the trial court erred as to its conclusion as to the classification of the Darlington Avenue property, as there were no findings of fact to support the conclusion of law. We therefore remand the matter to the trial court to make additional findings of fact regarding the classification of the Darlington Avenue property and to make its conclusion of law based upon its findings of fact.

[3] Our analysis as to the classification of the Darlington Avenue property is not over, because the additional issue as presented at trial and ably argued by both parties will arise again on remand. We will therefore address these arguments as well.

At trial, undisputed evidence was presented that plaintiff owned a house located at 717 Mercer Avenue prior to her marriage to defendant. During the marriage, the Mercer Avenue property was exchanged

for the Darlington Avenue property, which was titled in both parties' names in the entireties. Defendant had also owned a house prior to the parties' marriage, and plaintiff testified that the parties had essentially agreed that defendant would keep his house and she would keep hers. Although defendant's testimony as to the parties' agreement, if any, as to the Darlington Avenue property at the time of its acquisition is not entirely clear, he did affirm that there was no "discussion that [the Darlington Avenue house] was her separate property[.]" Yet, arguably the only evidence which could potentially support findings of fact to rebut the marital property presumption is plaintiff's testimony as to her intent. Herein lies the issue which the trial court must resolve on remand.

Defendant argues that plaintiff's testimony alone cannot, as a matter of law, suffice to rebut the marital property presumption:

> "the donor's testimony alone that [s]he lacked the requisite intent is insufficient to rebut the marital gift presumption." Warren, 175 N.C. at 514, 623 S.E.2d at 803 (citing Thompson, 93 N.C. App. at 232, 377 S.E.2d at 768-69 (defendant's testimony alone "certainly" did not rise to the level of clear, cogent, and convincing evidence); and 3 Reynolds, supra, § 12.33, at 12-102 ("Often the only evidence of a lack of donative intent is the donor's testimony. The appellate cases of North Carolina have uniformly held that such evidence alone will not satisfy the burden of rebutting the presumption by clear, cogent, and convincing evidence.")).

> The only evidence in this case which could possibly be construed as attempting to overcome the marital gift presumption is Plaintiff's own testimony both parties had a house before the marriage and Plaintiff traded hers for the Darlington Avenue property. . . . This testimony standing alone is insufficient, as a matter of law, to overcome the marital gift presumption as to the Darlington Avenue real property. Id.

Plaintiff takes issue with defendant's characterization of Warren as establishing that "the donor's testimony alone that [s]he lacked the requisite intent is insufficient to rebut the marital gift presumption" as well as Reynolds' characterization of the caselaw. Plaintiff argues that North Carolina's appellate cases have actually not "uniformly held that [the donor's testimony] alone will not satisfy the burden of rebutting the presumption by clear, cogent, and convincing evidence." Plaintiff argues that

[t]he Defendant's argument actually relies upon *a subsequent erroneous extension of the McLean* presumption, by which a certain species of testimony has been deemed insufficient— apparently, as a matter of law—to meet the "clear, cogent, and convincing" standard. To the extent these opinions from the Court of Appeals maintain such a rule, they are in conflict with the original holding in *McLean*, in that they substitute a blanket evidentiary rule (which is not the rule found in *McLean*) for the trial court's discretion in determining the sufficiency of the evidence (which is the rule found in *McLean*).

(Emphasis in original.) We must therefore review the development of the marital gift presumption and how it may be rebutted from *McLean v. McLean*, 323 N.C. 543, 374 S.E.2d 376 to the present, to determine if a rule as articulated by Reynolds has actually been established in our caselaw. If it has, on remand the trial court would have no option but to conclude that the Darlington Avenue house is marital property, as the only evidence as to intent of the donor is plaintiff's testimony; if not, the trial court on remand would weigh the relevant evidence, including plaintiff's testimony, and determine, based upon clear, cogent, and convincing evidence, whether plaintiff successfully rebutted the presumption.

We begin our analysis with an opinion of this Court which predated *McLean* and was cited as part of the rationale of *McLean*, *Draughon v. Draughon*, 82 N.C. App. 738, 347 S.E.2d 871 (1986), *cert denied*, 319 N.C. 103, 353 S.E.2d 107 (1987). *Draughon* is also one of the cases cited by Reynolds to support the proposition that appellate cases have "uniformly" held that testimony of the donor spouse is insufficient as a matter of law to rebut the marital gift presumption. In *Draughon*, the wife argued that her separate funds which were used to pay the mortgage on the marital home should have been classified as her separate property, as she testified that she did not intend to make a gift to the marital estate. *Id.* at 739, 347 S.E.2d at 872. We noted that the wife

contends this testimony was sufficient to rebut the presumption of a gift of separate property to the marital estate by clear, cogent, and convincing evidence. This evidence may be clear and cogent, but evidently it was not convincing to the trial court. The credibility of a witness is a matter to be resolved by the trier of fact. *Laughter v. Lambert*, 11 N.C. App. 133, 180 S.E.2d 450 (1971). Upon appellate review of a case heard without a jury the trial

court's findings of fact are conclusive on appeal if there is evidence to support them, even though evidence might sustain findings to the contrary. *Dixon v. Kinser and Kinser v. Dixon*, 54 N.C. App. 94, 282 S.E.2d 529 (1981), *disc. rev. denied*, 304 N.C. 725, 288 S.E.2d 805 (1982). We have reviewed the evidence and find that it supports the court's findings. The court properly concluded, based upon the case law, that defendant's sum was a gift to the marital estate in the form of a mortgage payment.

*Id.* at 739-40, 347 S.E.2d at 872. *Draughon* did not establish a rule that testimony of the donor spouse cannot rebut the marital gift presumption as a matter of law. Instead, it recognized and applied the well-settled rule that the trial court determines the credibility of the witnesses and the weight to be given to the testimony. The trial court did not find the wife's evidence convincing, and this Court found the trial court's determination conclusive because it was supported by the evidence.

In *McLean v. McLean*, 323 N.C. 543, 546-47, 374 S.E.2d 376, 378-79, our Supreme Court addressed the operation of the marital gift presumption as established in *McLeod v. McLeod*, 74 N.C. App. 144, 327 S.E.2d 910 and how this presumption may be rebutted.

[C]onsidering the nature of the marital relationship and of the entireties estate, we conclude that the marital gift presumption established in *McLeod* is appropriate as an aid in construing N.C.G.S. § 50-20(b)(2). Donative intent is properly presumed when a spouse uses separate funds to furnish consideration for property titled as an entireties estate. *McLeod*, 74 N.C. App. at 154, 327 S.E.2d at 916-17. This presumption is sufficiently strong that it is, and should be, rebuttable only by clear, cogent, and convincing evidence. *Id.* Rebuttal of the presumption would then result in application of traditional source of funds analysis.

When property subject to classification is titled as a tenancy by the entirety, therefore, the marital gift presumption controls the initial determination of whether a gift has been made. If a spouse uses separate funds to acquire property titled by the entireties, the presumption is that a gift of those separate funds was made, and the statute's interspousal gift provision applies. Unless that presumption is rebutted by clear, cogent and convincing evidence, the statute dictates that the gift "shall be considered separate property only if such an intention is stated in the conveyance." N.C.G.S. § 50-20(b)(2) (1987).

ROMULUS v. ROMULUS

[215 N.C. App. 495 (2011)]

*Id.* at 551-52, 374 S.E.2d at 381-82 (footnote omitted). Thus, *McLean* sets forth the rule that when one spouse deeds his or her separate real property to both parties as tenants by the entireties, a presumption of a gift to the marital estate arises, which can be rebutted only by either "clear, cogent, and convincing evidence" or by the intention that the property remain separate as "stated in the conveyance." *See id. McLean* does not say that testimony of the donor cannot, as a matter of law, be sufficient evidence to rebut the presumption. In the preceding case, *McLean v. McLean*, 88 N.C. App. 285, 289-90, 363 S.E.2d 95, 98-99 (1987), this Court noted that the trial court found that the defendant had not presented "clear, cogent, and convincing" evidence sufficient to rebut the marital gift presumption. This Court did not find that the trial court was correct because the defendant's evidence as to his own intent was incompetent as a matter of law to support a finding; instead the *McLean* court noted that

> [d]efendant presented evidence showing the source of his separate funds and their application to the Camp Branch Road property and the office building. He also elicited testimony from plaintiff that she did not want to be awarded anything from defendant's inheritance. *Whether defendant succeeded in rebutting the presumption of gift to the marital estate by clear, cogent, and convincing evidence is a matter left to the trial court's discretion.* Defendant's evidence "may be clear and cogent, but evidently it was not convincing to the trial court." *Draughon v. Draughon*, 82 N.C. App. 738, 739, 347 S.E.2d 871, 872 (1986), *cert. denied*, 319 N.C. 103, 353 S.E.2d 107 (1987). There is some competent evidence to support the trial court's findings; therefore, its rulings will not be disturbed on appeal. *Lawing v. Lawing*, 81 N.C. App. 159, 344 S.E.2d 100 (1986). . . .

*Id.* (emphasis added). Thus, the *McLean* court recognized that the determination of the weight of the evidence, whether from testimony of the donor spouse or other evidence, was left to the trial court's discretion. As the trial court had properly exercised its discretion, the Supreme Court affirmed this Court's ruling on this issue. *McLean*, 323 N.C. at 555, 374 S.E.2d at 383.

Defendant relies primarily on two of the next cases in this line, *Thompson v. Thompson*, 93 N.C. App. 229, 377 S.E.2d 767 (1989) and *Warren v. Warren*, 175 N.C. App. 509, 623 S.E.2d 800 (2006) to argue that "the donor's testimony alone that [s]he lacked the requisite intent is insufficient to rebut the marital gift presumption." *See id.* at 514, 623 S.E.2d at 803. Although these words are accurately quoted from

*Warren,* we must determine if this statement is in fact a rule of law or *obiter dicta.* We will address these cases also in chronological order.

In *Thompson v. Thompson,* the husband contributed separate property to the purchase of the parties' marital home, which was titled as tenants by the entireties, but presented evidence that he did not intend to make a gift to the martial estate of his separate inheritance. 93 N.C. App. at 230, 232, 377 S.E.2d at 767, 768. The trial court concluded that he made a gift to the marital estate by placing title to the property as tenants by the entireties, and the husband argued on appeal that this conclusion was in error. *Id.* at 230, 377 S.E.2d at 767. The *Thompson* court noted the "settled rule" that *"McLean* [had] adopted the marital gift presumption of *McLeod* for entireties property" and stated that

> The question then becomes whether defendant has come forward with clear, cogent, and convincing evidence to rebut this presumption. We find that he has not.
>
> The conveyance itself contained no statement that defendant intended to keep the residence his separate property. Whether evidence presented by defendant at trial is sufficient to "[rebut] the presumption of gift to the marital estate by clear, cogent, and convincing evidence is a matter left to the trial court's discretion." *Id.* at 555, 374 S.E.2d at 383, *quoting with approval, McLean v. McLean,* 88 N.C. App. 285, 290, 363 S.E.2d 95, 98-99 (1987).

At trial the only evidence properly before the court as to defendant's intent concerning the status of the residence on Asheboro Street was the following:

> Q: Mr. Thompson, was it your intent to have your former wife's name placed on the deed?
>
> A: No, and this is the reason I asked twice first.

As to defendant's intent concerning the property on Mystic Drive, the transcript reveals only the following interchange:

> Q: Whenever you bought the second house [on Mystic Drive], do you know whose names were put on the deed?
>
> A: The second house, due to the fact that Peggy's name was placed on the deed to my second house it was only natural then that her name was going to go to the third house.

We agree with plaintiff's argument that the above-quoted statements of defendant show merely that he considered whether to place plaintiff's name on the deed and then proceeded to do so. In any event, they certainly do not rise to the level of clear, cogent, and convincing evidence of defendant's intention not to make a gift to the marital estate.

*Id.* at 232, 377 S.E.2d at 768-69. If the absence of a statement of contrary intent in the conveyance were the only competent evidence to refute the marital gift presumption, the *Thompson* court would not have addressed the defendant's testimonial evidence, as this would have been unnecessary for its ruling. Likewise, if the husband's testimony, as the donor spouse, was incompetent as a matter of law to rebut the presumption, the *Thompson* court need not have considered his actual testimony. *Thompson* therefore does not hold that the donor's testimony cannot be sufficient evidence to rebut the marital gift presumption; it merely agreed that the trial court had properly weighed the evidence and concluded that it did not rebut the presumption.

Likewise, in *Lawrence v. Lawrence*, this Court considered whether a parcel of real property purchased with the husband's inheritance but deeded to both parties as tenants by the entireties was properly classified as his separate property. 100 N.C. App. 1, 7-8, 394 S.E.2d 267, 269-70 (1990). The wife argued that based upon *McLean*, the trial court should have classified the real property as marital as it was titled as tenants by the entireties. *Id.* at 8-9, 394 S.E.2d at 269-70. The trial court made extensive findings of fact about the property, including the following:

This property is ancestral property and has been in the Defendant's maternal ancestry for over 100 years. The Court further finds that when the Plaintiff took an appraiser to these tracts of land for an appraisal to be made in Mitchell County to testify in this cause, the Plaintiff did not know where the 24 acres or the 2.14 acres were located on Conley Ridge Road. That the Defendant testified that at no time did he ever intend to make a gift of any of these deeds to the Mitchell County property to his wife. That the Plaintiff did not testify that she understood that the Defendant intended to make her a gift of the Mitchell County property. The Court finds that the evidence is clear, cogent and convincing and of sufficient weight to rebut the presumption of gift created by the deeds being in the form of tenants by the entirety.

*Id.* at 8, 394 S.E.2d at 270. This Court found that the trial court had supported its conclusion of separate property with some facts which could not support this conclusion as they did not relate to the donor spouse's intent. *Id.* Specifically, *Lawrence* rejected the facts as to the use of the property, that it was "ancestral," and the donee spouse's knowledge or understanding of the facts regarding the property. *Id.* at 8-9, 394 S.E.2d at 270. But significantly for the issue before us now, the *Lawrence* court stated that the trial court should consider and weigh the husband's testimony as to his intent.

> The trial court erred by relying on defendant's use of separate property to purchase the 24 acre tract to rebut the presumption of a gift to the marital estate. Additionally, the findings that this property was "ancestral," that plaintiff did not know its location and her lack of testimony that she understood that defendant intended to make a gift are irrelevant to the issue of whether this property is marital property.

The remaining basis for the trial court's determination that the gift presumption was rebutted is defendant's testimony that he did not intend to make a gift to his wife. "Whether defendant succeeded in rebutting the presumption of gift to the marital estate by clear, cogent and convincing evidence is a matter left to the trial court's discretion." *McLean v. McLean*, 88 N.C. App. 285, 290, 363 S.E.2d 95, 98–99 (1987), *aff'd*, 323 N.C. 543, 374 S.E.2d 376 (1988). The general rule is that "[u]pon appellate review of a case heard without a jury the trial court's findings of fact are conclusive on appeal if there is evidence to support them . . . ." *Draughon v. Draughon*, 82 N.C. App. 738, 740, 347 S.E.2d 871, 872 (1986), *cert. denied*, 319 N.C. 103, 353 S.E.2d 107 (1987). Although the trial court here found as a fact that defendant had rebutted the gift presumption, the court erred in relying on evidence that has no bearing on the issue. Accordingly, *we remand to the trial court for a determination whether defendant's relevant evidence was sufficiently clear, cogent and convincing to rebut the gift presumption. We note that this court has affirmed findings that property is marital even though a donor spouse testified that a gift was not intended. See Thompson v. Thompson*, 93 N.C. App. 229, 232, 377 S.E.2d 767, 768–69 (1989) (trial court did not err in determining that parties' home was marital property where only competent evidence that a gift was not intended was donor's testimony); *Draughon*, 82 N.C. App. at 739–40, 347 S.E.2d at 872 (although donor spouse testified that she did not intend a

gift there was evidence to support trial court's finding that the property was marital).

*Id.* at 8-9, 394 S.E.2d at 270-71 (emphasis added). If Mr. Lawrence's testimony alone as to his intent was insufficient as a matter of law to support the trial court's determination that he had rebutted the marital gift presumption, just as in *Thompson*, there would have been no need to remand the case to the trial court to make additional findings. The *Lawrence* court noted that some cases have found the testimony of the donor spouse to be insufficient, but it remains a determination which is made in the discretion of the trial judge.

Finally, we reach the most recent case, *Warren v. Warren* 175 N.C. App. 509, 623 S.E.2d 800. In *Warren*, Mr. Warren and his brother inherited real property from their father. *Id.* at 513, 623 S.E.2d at 802. Later, Mr. Warren and his brother deeded the entire property to Mr. Warren and his wife as tenants by the entireties, thus creating the marital gift presumption. *Id.* Mr. Warren testified at trial that he "did not instruct the attorney performing the conveyance to transfer the property by the entireties[.]" *Id.* at 514, 623 S.E.2d at 803. He made an offer of proof that "he had no intent to make a gift to [his wife] of [any] inheritance whatsoever," but this evidence was not admitted by the trial court. *Id.* (footnote and quotation marks omitted). On appeal, this Court specifically did not address Mr. Warren's offer of proof of testimony as to his intent. *Id.* We noted that "Mr. Warren did not assign [the trial court's ruling which excluded his testimony regarding his intent] as error and we, therefore, will not review it. N.C.R. App. P. 10(a)." *Id.* at 514 n.2, 623 S.E.2d at 803 n.2. We addressed only Mr. Warrant's testimony that he "did not instruct the attorney" to deed the property by the entireties. *Id.* at 514, 623 S.E.2d at 803. We then stated:

> Our courts have held, however, that the donor's testimony alone that he lacked the requisite intent is insufficient to rebut the marital gift presumption. *See Thompson v. Thompson*, 93 N.C. App. 229, 232, 377 S.E.2d 767, 768-69 (1989) (defendant's testimony alone "certainly" did not rise to the level of clear, cogent, and convincing evidence). *See also* 3 Reynolds, *supra*, § 12.33, at 12-102 ("Often the only evidence of a lack of donative intent is the donor's testimony. The appellate cases of North Carolina have uniformly held that such evidence alone will not satisfy the burden of rebutting the presumption by clear, cogent, and convincing evidence."). Accordingly, because the only relevant evidence Mr. Warren offered to rebut the presumption was his own testimony, the trial court did not err in finding that the entire parcel was marital property.

ROMULUS v. ROMULUS

[215 N.C. App. 495 (2011)]

*Id.* Thus, any statement in *Warren* addressing Mr. Warren's proffered testimony that he did not intend to make a gift to the marital estate was unnecessary for the court's ruling. The *Warren* court specifically stated that this issue was not assigned as error and was not reviewed. *Warren* cannot be read as adopting a rule that the donor's testimony alone cannot "satisfy the burden of rebutting the presumption by clear, cogent, and convincing evidence[,]" *see id.*, because any statement to this effect is *obiter dicta.* Our Supreme Court has noted that

> "[i]n every case what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but *obiter dicta.*" *Hill v. Houpt*, 292 Pa. 339, 141 A. 159, 160.

On the subject of *obiter dicta*, we find this statement in Black, Law of Judicial Precedents, at page 173: " . . . if the statement in the opinion was . . . superfluous and not needed for the full determination of the case, it is not entitled to be accounted a precedent, for the reason that it was, so to speak, rendered without jurisdiction or at least extra-judicial. Official character attaches only to those utterances of a court which bear directly upon the specific and limited questions which are presented to it for solution in the proper course of judicial proceedings. Over and above what is needed for the solution of these questions, its deliverances are unofficial."

True, where a case actually presents two or more points, any one of which is sufficient to support decision, but the reviewing Court decides all the points, the decision becomes a precedent in respect to every point decided, and the opinion expressed on each point becomes a part of the law of the case on subsequent trial and appeal. In short, a point actually presented and expressly decided does not lose its value as a precedent in settling the law of the case because decision may have been rested on some other ground. 21 C.J.S., Courts, Sec. 190, p. 314.

*Hayes v. Wilmington*, 243 N.C. 525, 536-37, 91 S.E.2d 673, 682 (1956). The *Warren* court did not base its decision upon, or even consider, two points as to Mr. Warren's testimony; it considered only one as it considered only one assignment of error, as to Mr. Warren's testimony that he did not instruct the attorney to deed the property as tenants by the entirety. 175 N.C. App. at 514-15, 623 S.E.2d at 803. This testimony does not address Mr. Warren's intent but is merely testimony that he did not instruct the attorney as to the content of the deed. In addition, *Warren* held simply that the trial court did not err in deter-

mining that Mr. Warren had not rebutted the marital gift presumption by his testimony that he did not instruct the attorney as to the deed. *See id.* This holding is entirely consistent with the prior cases as noted above, which leave the determination of the credibility of the witnesses and the weight of the evidence to the trial judge.

We also note that the quoted "rule" from *Warren* that "[o]ur courts have held, however, that the donor's testimony alone that he lacked the requisite intent is insufficient to rebut the marital gift presumption[,]" *see id.* at 514, 623 S.E.2d at 803, is an accurate description of the cases cited to the extent that in those cases, the trial court determined that the donor's testimony as to intent was not sufficient to rebut the marital gift presumption by clear, cogent, and convincing evidence. This does not mean that a trial court can never determine, in another case, upon weighing all of the evidence and the credibility of the witnesses, that a donor's testimony is sufficient to rebut the presumption.

Our Supreme Court has not directly addressed the issue of whether testimony of the donor spouse as to intent is insufficient as a matter of law to rebut the marital gift presumption. However, it has expressed its approval of this Court's holdings which left the determination of the weight of the evidence "to the trial court's discretion" in *Haywood v. Haywood*, 106 N.C. App. 91, 103, 415 S.E.2d 565, 572 (1992) (Wynn, J., dissenting), *rev'd per curiam by* 333 N.C. 342, 425 S.E.2d 696 (1993) (adopting J. Wynn's dissent). In *Haywood*, our Supreme Court adopted the dissent of Judge Wynn, which noted that

> previous holdings of our courts . . . have required that a presumption of a gift of separate property to the marital estate is rebuttable only by a showing of *clear, cogent, and convincing evidence. See [McLean,* 323 N.C. at 552, 374 S.E.2d at 382]; *Lawrence v. Lawrence,* 100 N.C. App. 1, 394 S.E.2d 267 (1990). Moreover, whether a party has succeeded in rebutting the presumption of a gift to the marital estate by clear, cogent, and convincing evidence is a matter left to the trial court's discretion. *Lawrence,* 100 N.C. at 9, 394 S.E.2d at 270.

*Id.*

We therefore hold that the trial court should consider the credibility and weight of all of the relevant evidence, including testimonial evidence of the donor spouse as to her intent in making a conveyance of separate real property to the parties as tenants by the entireties, just as it considers all other evidence. Of course, the trial court must

find clear, cogent, and convincing evidence to rebut a presumption of a gift to the marital estate in this situation, but whether the plaintiff's evidence is "clear, cogent, and convincing" is left to the trial court's discretion. The donor spouse's testimony is not incompetent as a matter of law on this issue.

In summary, we reverse the trial court's conclusion of law that the Darlington Avenue property is the separate property of plaintiff as this conclusion is not supported by findings of fact. On remand, the trial court shall make findings of fact regarding the Darlington Avenue property, including findings as to whether plaintiff has rebutted the marital gift presumption by clear, cogent, and convincing evidence; shall make its conclusion of law as to classification of this property based upon those findings of fact; and shall adjust the distribution of property accordingly, if the classification changes and adjustment is necessary. We express no opinion on what findings of fact or conclusion of law the trial court should make on remand, but direct only that the trial court shall exercise its discretion in making the appropriate findings of fact and shall make the proper conclusion of law based on those findings. There is no need for presentation of additional evidence.

3.  Post-separation net rental income and losses from investment properties

[4]  Defendant's last argument is that the trial court erred in its valuation of "the post-separation net rental income and losses from the parties' investment properties." The parties agreed in the PTO that the "net post-separation income and loss from the marital investment properties constituted divisible property" but "disagreed on the valuation of the net income and loss and the properties to be included in this calculation." Defendant's evidence showed a net loss on the investment properties, while plaintiff's evidence was that defendant had a net income of $266,443.00.

The trial court made the following findings of fact regarding the valuation of the post-separation rental income or loss:

[6.] NN. Divisible Property: The Court finds that following the separation of the parties, the Husband collected rent from various commercial properties owned by the parties. From mid-2006 (DOS) through the end of 2008, the Husband collected a net of $266,443.00 and had sole use of the proceeds. The Court adopts as its findings the credible evidence regarding the same introduced

by the Plaintiff in the chart entitled "Calculation of Rental Income Net of Mortgage and Taxes for Romulus Commercial Properties" located at tab H3.1 in Plaintiffs notebook and incorporates the same herein as if fully set forth. The Court finds these proceeds to be a marital divisible asset and assigns them to Husband.

The table at Tab H3.1, which was incorporated by reference in Finding 6(NN) summarized rental receipt and expenses for 2006, 2007, and 2008 for each of the following properties:

1. 3725 Wrightsville
2. 3131-3147 Wrightsville
3. 715-717 Market
4. 3538 S. College
5. 2309 Delaney
6. 6401 Windmill Way

The net income for all of the properties is shown as $266,443.00.

The trial court also addressed the post-separation rental income or loss in its findings of fact regarding distributional factors:

7. DISTRIBUTIONAL FACTORS: . . . .

M. Any other factor which the Court finds to be just and proper.

   The Court considers that there was additional divisible property in the form of rents from the commercial and other real estate holdings of the parties, but there was insufficient evidence at trial to value such rents. However, there is substantial value to this divisible property and it was considered by the Court in achieving equity. This factor weighs in favor of the Wife. The Court further considered that the Husband paid substantial sums of PSS to the Wife and upon hearing before this Court, the alimony claim of the Wife was ultimately denied. This will be a distributional factor (not a credit) that weighs in favor of the Husband.

Defendant argues that the trial court failed to make findings regarding his evidence of post-separation losses on three additional properties, which were not listed on Plaintiff's exhibit H3.1. These properties were identified as 202 Cape Pointe, 73 Darlington Avenue, and 911 Orange Street. Defendant argues that his evidence indicated that these properties had net post-separation losses of $33,457.00. Defendant contends that the trial court erred by failing to make specific findings regarding the value of these divisible losses: "In performing the necessary steps to equitably distribute the parties' prop-

erty, a court is required to make sufficiently specific findings of fact for an appellate court to determine what was done and to evaluate its correctness. See Wade v. Wade, 72 N.C. App. 372, 376, 325 S.E.2d 260, 266 (1985)."

Our standard of review as to this issue is "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Lee*, 167 N.C. App. at 253, 605 S.E.2d at 224 (citation and quotation marks omitted). Defendant does not argue that there was no evidence to support finding of Fact 6(NN), but instead that the trial court did not make adequate findings of fact as to each potential item of divisible income or loss for which defendant presented evidence, such that the findings are inadequate for this Court to "evaluate its correctness."

Plaintiff responds that taken together, Finding 6(NN) and 7(M) demonstrate that the trial court made findings as to all of the post-separation rental loss or income for which it deemed the evidence to be sufficiently credible that the court could make specific findings noting that "[t]he mere introduction of evidence does not entitle the proponent to a finding thereon, since the finder must pass on its weight and credibility[.]" *Long v. Long*, 71 N.C. App. 405, 407, 322 S.E.2d 427, 430 (1984).

As to the Darlington Avenue property, we note that the trial court classified it as plaintiff's separate property, so that the post-separation income or loss could not be divisible property. As discussed above, we have remanded to the trial court to make additional findings of fact and conclusions of law regarding the Darlington Avenue property, so the issue of the treatment of the post-separation income or loss from that property must also be addressed on remand. We will therefore address defendant's argument only as to 202 Cape Pointe and 911 Orange Street properties. Upon review of the testimony and exhibits regarding the rental income and losses from these properties, we find that the trial court's findings of fact are supported by the evidence, and they adequately address the issues raised. The trial court determined that although there was rental income from properties other than those identified in finding of fact 6(NN), there was not sufficient credible evidence to permit the trial court to determine specific values. This is reflected in Finding of fact 7(M), which notes that "there was insufficient evidence at trial to value such rents." Defendant's argument as to error in the valuation of the post-separation rental income or loss is therefore without merit.

III. Plaintiff's cross-appeal of the order denying alimony

A. Illicit sexual behavior

**[5]** Plaintiff filed notice of cross-appeal to the trial court's order denying her claim for alimony based upon its conclusion that she had "engaged in an act of illicit sexual behavior as defined in N.C.G.S. § 50-16.1A(3)(a) which has not been condoned by the Defendant and did not occur during a period of separation." Plaintiff argues that the trial court "erred as a matter of law in concluding that the plaintiff's 'sexual' conduct met the definition of 'illicit sexual behavior' within the meaning of N.C. Gen. Stat. § 50-16.1A(3)a." Plaintiff's arguments require that we consider the definitions of "illicit sexual behavior" as applicable to N.C. Gen. Stat. § 50-16.3A. Also, a portion of the trial court's findings here is based upon the plaintiff's admission to engaging in "sexual relations." Although defendant argues that "[i]n common usage, the term 'sexual relations' is synonymous with 'sexual intercourse,' " based upon Merriam-Webster's Online Dictionary definition, the meaning of "sexual relations" is not always so obvious. In addition, the term "sexual relations" is not part of the statutory definition for illicit sexual behavior. *See* N.C. Gen. Stat. § 50-16.1A(3)a (2009).

The trial court made the following findings of fact regarding plaintiff's entitlement to alimony:

10. Although the Plaintiff is a dependent spouse and the Defendant is a supporting spouse, the Court finds that the Plaintiff has voluntarily participated in an act of illicit sexual behavior as defined by N.C.G.S. §50-16.1A(3)(a) during the course of the marriage which has not been condoned by the Defendant in that he did not know of the Plaintiff's activities until the trial of this matter.

11. During the marriage in the summer and fall of 1999, the Plaintiff was involved in an act or acts of illicit sexual behavior with a man by the name of Steve Cline by allowing Mr. Cline to penetrate her vagina either with his finger or his penis on at least one or more occasions.

12. At the initial hearing of this trial, the Plaintiff admitted under oath to having "sexual relations" or "sexual encounters" with Steve Cline in 1999.

13. Thereafter, the case was continued at the request of the Plaintiff. At the subsequent hearing, the Plaintiff testified that she

considered kissing to be "sexual relations." This testimony is not believable to this Court. Steve Cline was subpoenaed to testify and testified that he remembered having sexual relations with the Plaintiff on two occasions, once on Bald Head Island and once in a pool. Although Mr. Cline testified that he did not recall the exact details of the two encounters, he did recall that even though sexual intercourse may have failed due to his failure to obtain or maintain an erection, he rubbed the Plaintiff's vaginal area and she touched his penis. The Court has had the opportunity to observe the witnesses testify, had access to their demeanor, tone of voice and ultimately the credibility of the parties. Based on these factors, it is clear to this Court that the Plaintiff engaged in active illicit sexual behavior with Steve Client during the parties' marriage.

14. As stated above, the Defendant was not ever made aware of these encounters until the trial of this matter and as such, did not condone such actions.

. . . .

17. There is insufficient evidence to indicate that the Defendant has committed any act of illicit sexual behavior during the marriage. However, [t]he Court finds [the] Plaintiff's testimony credible and Defendant's admission that Defendant committed marital misconduct by the following:

a. His excessive viewing of pornography, in spite of Plaintiff's request to the contrary and to the extent that one of the parties' children "caught" him viewing same. He was in excessive [sic] therapy for this problem.

b. His multiple incidents of violence against the Plaintiff, the most violent one being the incident intentionally breaking her right arm.

c. His violence against the parties' minor children pushing them, hitting them and in one instance choking one of the minor children until he lost consciousness.

d. His repeated verbal abuse of Plaintiff and the minor children.

Our standard of review for the trial court's determination as to plaintiff's entitlement to alimony is *de novo*.

As our statutes outline, alimony is comprised of two separate inquiries. First is a determination of whether a spouse is *entitled*

to alimony. N.C. Gen. Stat. § 50-16.3A(a) (1999). Entitlement to alimony requires that one spouse be a dependent spouse and the other be a supporting spouse. *Id.* If one is entitled to alimony, the second determination is the amount of alimony to be awarded. N.C. Gen. Stat. § 50-16.3[A](b). We review the first inquiry de novo, *Rickert v. Rickert*, 282 N.C. 373, 379, 193 S.E.2d 79, 82 (1972), and the second under an abuse of discretion standard, *Quick v. Quick*, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982).

*Barrett v. Barrett*, 140 N.C. App. 369, 371, 536 S.E.2d 642, 644 (2000) (emphasis in original).

N.C. Gen. Stat. § 50-16.3A (2009) sets forth when alimony may be awarded:

> (a) Entitlement.—In an action brought pursuant to Chapter 50 of the General Statutes, either party may move for alimony. The court shall award alimony to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors, including those set out in subsection (b) of this section. If the court finds that the dependent spouse participated in an act of illicit sexual behavior, as defined in G.S. 50-16.1A(3)a., during the marriage and prior to or on the date of separation, the court shall not award alimony. If the court finds that the supporting spouse participated in an act of illicit sexual behavior, as defined in G.S. 50-16.1A(3)a., during the marriage and prior to or on the date of separation, then the court shall order that alimony be paid to a dependent spouse. If the court finds that the dependent and the supporting spouse each participated in an act of illicit sexual behavior during the marriage and prior to or on the date of separation, then alimony shall be denied or awarded in the discretion of the court after consideration of all of the circumstances. Any act of illicit sexual behavior by either party that has been condoned by the other party shall not be considered by the court. . . .

"Illicit sexual behavior" is one of the eight forms of "marital misconduct" as defined by N.C. Gen. Stat. § 50-16.1A(3) (2009).[3] "Illicit sexual

---

3. N.C. Gen. Stat. § 50-16.1A(3) lists the others:
"b. Involuntary separation of the spouses in consequence of a criminal act committed prior to the proceeding in which alimony is sought;
c. Abandonment of the other spouse;
d. Malicious turning out-of-doors of the other spouse;
e. Cruel or barbarous treatment endangering the life of the other spouse;

behavior" is treated differently from all other forms of "marital misconduct," as the trial court has the discretion to weigh all of the other forms of "marital misconduct" and to determine what effect, if any, the misconduct should have upon the alimony award. *See* N.C. Gen. Stat. § 50-16.3A(b) ("The court shall exercise its discretion in determining the amount, duration, and manner of payment of alimony. . . . In determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors, including: (1) The marital misconduct of either of the spouses. . . ."). As to "illicit sexual behavior" only, N.C. Gen. Stat. § 50-16.3A(a) eliminates the trial court's discretion to weigh the marital misconduct of the parties unless both parties have committed "illicit sexual behavior." If only the dependent spouse has engaged in uncondoned "illicit sexual behavior" during the marriage and prior to the date of separation, the trial court cannot award alimony, even if the supporting spouse has committed egregious "marital misconduct" of another sort. *See id.*

N.C. Gen. Stat. § 50-16.1A(3)a defines "illicit sexual behavior" as "acts of sexual or deviate sexual intercourse, deviate sexual acts, or sexual acts defined in G.S. 14-27.1(4), voluntarily engaged in by a spouse with someone other than the other spouse[.]" Thus, N.C. Gen. Stat. § 50-16.1A(3) establishes four categories of sexual misconduct:

(1) "sexual intercourse"

(2) "deviate sexual intercourse"

(3) "deviate sexual acts"

(4) "sexual acts as defined in [N.C. Gen. Stat. §] 14-27.1(4)."

Because the trial court's finding of fact was that plaintiff had allowed "Mr. Cline to penetrate her vagina either with his finger or his penis on at least one or more occasions[,]" the trial court did not clearly find one particular form of "sexual misconduct" but instead found

f. Indignities rendering the condition of the other spouse intolerable and life burdensome;
g. Reckless spending of the income of either party, or the destruction, waste, diversion, or concealment of assets;
h. Excessive use of alcohol or drugs so as to render the condition of the other spouse intolerable and life burdensome;
i. Willful failure to provide necessary subsistence according to one's means and condition so as to render the condition of the other spouse intolerable and life burdensome."

4. Plaintiff argues that the "deviate sexual intercourse" and "deviate sexual acts" are undefined and essentially too vague to be useful. As the acts as found by the trial court fall within the two better-defined categories of sexual misconduct, we will not attempt to discern the meaning of "deviate" in the context of N.C. Gen. Stat. § 50-16.1A(3)a.

one or the other; it is also unclear whether the trial court found that both might have occurred, one on one occasion and one on another. So based upon the trial court's findings of fact, two of these categories of sexual misconduct are relevant to this case: "sexual intercourse" and "sexual acts as defined in [N.C. Gen. Stat. §] 14-27.1(4)."[4]

The definition of "sexual intercourse" is clear:

> The terms "carnal knowledge" and "sexual intercourse" are synonymous. There is "carnal knowledge" or "sexual intercourse" in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient. G.S. 14-23; *State v. Monds*, 130 N.C. 697, 41 S.E. 789; *State v. Hargrave*, 65 N.C. 466; *State v. Storkey*, 63 N.C. 7; Burdick: Law of Crime, section 477; 44 Am. Jur., Rape, section 3; 52 C.J. Rape, sections 23, 24.

*State v. Bowman*, 232 N.C. 374, 375-76, 61 S.E.2d 107, 108 (1950). The trial court's finding of penetration of the plaintiff's vagina by Mr. Cline's penis satisfies the definition of "sexual intercourse." Plaintiff argues that the trial court's finding of "sexual intercourse" is not supported by the evidence. Plaintiff testified that she did not have "sexual intercourse" with Mr. Cline. Mr. Cline testified that he was unable to penetrate plaintiff's vagina with his penis due to erectile dysfunction. Plaintiff is correct that there was no direct evidence of "sexual intercourse" between herself and Mr. Cline. Defendant responds that under the doctrine of "inclination and opportunity," the evidence was sufficient to support the trial court's finding of "sexual intercourse." Our Supreme Court has declared that:

> Adultery is nearly always proved by circumstantial evidence. 1 Robert E. Lee, *North Carolina Family Law* § 65 (4th ed. 1979). Circumstantial evidence "is often the only kind of evidence available, as misconduct of this sort is usually clandestine and secret." *Id.* Where adultery is sought to be proved by circumstantial evidence, resort to the opportunity and inclination doctrine is usually made. *Id.* Under this doctrine, adultery is presumed if the following can be shown: (1) the adulterous disposition, or inclination, of the parties; and (2) the opportunity created to satisfy their mutual adulterous inclinations. *Id.*

In *Owens v. Owens*, 28 N.C. App. 713, 222 S.E.2d 704, *disc. rev. denied*, 290 N.C. 95, 225 S.E.2d 324 (1976), the North Carolina

Court of Appeals warned against adopting broad rules to prove adultery. The court said:

> We consider it unwise to adopt general rules as to what will or will not constitute proof of adultery, but the determination must be made with reference to the facts of each case. In some cases evidence of opportunity and incriminating or improper circumstances, without evidence of inclination or adulterous disposition, may be such as to lead a just and reasonable [person] to the conclusion of adulterous intercourse.

*Id.* at 716, 222 S.E.2d at 706 (footnote added).

*In re Estate of Trogdon,* 330 N.C. 143, 148-49, 409 S.E.2d 897, 900 (1991). We agree with defendant that the testimony of both plaintiff and Mr. Cline demonstrates their mutual "adulterous inclination" and their opportunity to "satisfy their mutual adulterous inclinations." *See id.*

Since the trial court phrased its finding of fact in the alternative, it is unclear if it actually did find that plaintiff and Mr. Cline had "sexual intercourse." We must therefore also address the finding as to penetration of plaintiff's vagina by Mr. Cline's finger, which arguably falls under N.C. Gen. Stat. § 50-16.1A(3)a, which addresses "sexual acts as defined in [N.C. Gen. Stat. §] 14-27.1(4)."

N.C. Gen. Stat. § 14-27.1(4) (2009) defines "sexual act" as follows:

> (4) "Sexual act" means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body: provided, that it shall be an affirmative defense that the penetration was for accepted medical purposes.

"Sexual acts" are distinguished from other forms of "sexual contact" as N.C. Gen. Stat. § 14-27.1(5) defines "sexual contact" as "(i) touching the sexual organ, anus, breast, groin, or buttocks of any person, (ii) a person touching another person with their own sexual organ, anus, breast, groin, or buttocks, or (iii) a person ejaculating, emitting, or placing semen, urine, or feces upon any part of another person." Thus, a "sexual act" requires "penetration, however slight, by any object into the genital or anal opening of another person's body[,]" while touching without penetration would be "sexual contact." The trial court's finding of fact that Mr. Cline's finger penetrated plaintiff's vagina is a finding of a "sexual act" as defined by N.C. Gen. Stat. § 14.27.1(4).

Just as for "sexual intercourse," the testimony of plaintiff and Mr. Cline provides sufficient evidence to support the trial court's finding of fact. Although more certain and clear evidence is required for proof of a "sexual act" under N.C. Gen. Stat. § 14.27.1(4) in the criminal context, in alimony claims our Supreme Court has long endorsed proof of "sexual intercourse" by the doctrine of inclination and opportunity, and we see no reason why this doctrine would not also apply to other forms of "illicit sexual behavior." *See* N.C. Gen. Stat. § 50-16.1A(3)a. The trial court did not err by its finding that plaintiff "voluntarily participated in an act of illicit sexual behavior as defined by N.C.G.S. §50-16.1A(3)(a)."

B.  Date of separation

[6] Plaintiff next argues that even if plaintiff's conduct was "illicit sexual behavior[,]" that the "trial court erred as a matter of law in concluding that the parties were not 'separated' at the time of the 'sexual encounters' between" plaintiff and Mr. Cline. Pursuant to N.C. Gen. Stat. § 50-16.1A(3)a, the dependent spouse's "illicit sexual behavior" must occur "during the marriage and prior to or on the date of separation" in order to be a bar to alimony.

The trial court's findings of fact as to the date of separation are as follows:

15.  In addition to her inconsistent testimony with regard to sexual relations, the Plaintiff has contended that she was "separated" at the time of the sexual behavior. Although there was some physical separation of the parties after a choking incident involving the parties' youngest son in the summer of 1999, neither party had expressed to the other party they wanted to separate nor in fact intended to permanently separate during the summer of 1999 through Christmas of 1999. Defendant continued to maintain all of his belongings at the marital residence and continued to have his mail delivered there. He did household chores and only occasionally slept at his dental office during this period of time.

16.  Neither party sought the advice of attorneys, executed any type of separation or property settlement agreement nor expressed a contention to permanently end their marriage.

Plaintiff argues that the trial court found that in order for the parties to have been "separated" that plaintiff "had to verbalize unequivocally, overtly, and expressly to [defendant] her intention for him never to return to live with her in the marital home, and her intention for the

parties' separation to be 'permanent.' " Defendant responds that plaintiff's argument is based upon "an incomplete recitation of the trial court's findings[,]" and that in fact, the trial court properly "viewed the totality of the evidence from both parties and after weighing the credibility of the testimony and weighting the evidence, the trial court determined there had been no actual separation of the parties."

The phrase "the date of separation[,]" as used in N.C. Gen. Stat. § 50-16.3A(3), is not defined by the statutory provisions regarding alimony, but has been addressed by our courts in the context of N.C. Gen. Stat. § 50-6, which addresses absolute divorce. N.C. Gen. Stat. § 50-6 (2009) provides that "[m]arriages may be dissolved and the parties thereto divorced from the bonds of matrimony on the application of either party, if and when the husband and wife have lived separate and apart for one year . . . ." The date upon which the husband and wife begin to live "separate and apart" is commonly known as the date of separation. We have noted that "[t]he words 'separate and apart,' as used in G.S. 50-6, mean that there must be both a physical separation and an intention on the part of at least one of the parties to cease the matrimonial cohabitation." *Myers v. Myers*, 62 N.C. App. 291, 294, 302 S.E.2d 476, 479 (1983) (citing *Mallard v. Mallard*, 234 N.C. 654, 68 S.E.2d 247 (1951) and *Earles v. Earles*, 29 N.C. App. 348, 224 S.E.2d 284 (1976)). Further,

> [i]n addressing whether a husband and wife have lived "separate and apart," this Court has repeatedly held that these words require "both a physical separation and an intention on the part of at least one of the parties to cease the matrimonial cohabitation." *Earles v. Earles*, 29 N.C. App. 348, 349, 224 S.E.2d 284, 286 (1976). *See also Myers v. Myers*, 62 N.C. App. 291, 294, 302 S.E.2d 476, 479 (1983); *Daniel v. Daniel*, 132 N.C. App. 217, 219, 510 S.E.2d 689, 690 (1999). Our courts have never required that the remaining party must also have knowledge of the other party's intent to cease cohabitation; therefore, we decline to do so now, especially when there is overwhelming evidence that all the requirements of Section 50-6 were met.

*Smith v. Smith*, 151 N.C. App. 130, 132-33, 564 S.E.2d 591, 592-93 (2002). In addition to the intention of at least one of the spouses to separate, the parties must physically separate in such a way that indicates "[a] cessation of cohabitation of husband and wife." *Dudley v. Dudley*, 225 N.C. 83, 85, 33 S.E.2d 489, 490 (1945) (quotation marks omitted).

[S]eparation implies . . . the living apart for such period in such a manner that those in the neighborhood may see that the husband and wife are not living together. . . .

Marriage is not a private affair, involving the contracting parties alone. Society has an interest in the marital status of its members, and when a husband and wife live in the same house and hold themselves out to the world as man and wife, a divorce will not be granted on the ground of separation, when the only evidence of such separation must, in the language of the Supreme Court of Louisiana (in the case of *Hava v. Chavigny*, 147 La., 331, 84 So., 892), "be sought behind the closed doors of the matrimonial domicile." Our statute contemplates the living separately and apart from each other, the complete cessation of cohabitation. *See Taylor v. Taylor, ante*, 80.

*Id.* at 86, 33 S.E.2d at 491 (citations omitted). Here, there was evidence that at times, the parties would have an argument and defendant "would go to the office for a couple of days and cool down or whatever . . . . [then he] would go, and then [he] would basically come back." However, even during these times when he went to stay in his office, defendant still would return to the marital home to take care of household chores, pay bills, and take the children to activities. Some of the parties' family members and acquaintances testified that they were unaware of any separation of the parties prior to their final separation in 2006; others testified that the parties had separated for a period of time in 1999. The trial court weighed all of the evidence and determined the credibility of the witnesses, and its findings of fact are fully supported by the evidence. The trial court's findings of fact and conclusions of law do not indicate any error of law as to the definition of "separation." This argument is overruled.

C. Attorney fees

[7] Plaintiff also argues that the trial court erred by denial of her claim for attorney fees based upon N.C. Gen. Stat. § 50-16.4. Plaintiff concedes that if this Court determines that the trial court properly denied her claim for alimony, her claim for attorney fees was also properly denied. As we have determined that the trial court did not err by denying plaintiff's alimony claim, there was no basis for the trial court to award her attorney fees. This argument is dismissed.

**ROMULUS v. ROMULUS**

[215 N.C. App. 495 (2011)]

D.  Simultaneous hearing of equitable distribution and alimony claims

[8]  Plaintiff's last argument addresses the permissible timing of the alimony and equitable distribution orders. Plaintiff argues that "the trial court erred as a matter of law in simultaneously conducting a hearing for both equitable distribution and alimony and in simultaneously rendering judgment on both claims, in contravention of the express provisions of statutory and case law." Plaintiff bases this argument primarily upon N.C. Gen. Stat. § 50-20(f) and cases interpreting it. N.C. Gen. Stat. § 50-20(f) (2009) provides as follows:

> (f)  The court shall provide for an equitable distribution *without regard to alimony* for either party or support of the children of both parties. After the determination of an equitable distribution, the court, upon request of either party, shall consider whether an order for alimony or child support should be modified or vacated pursuant to G.S. 50-16.9 or 50-13.7.

(Emphasis added.) Subsequent cases have stated that alimony must be determined after equitable distribution, because of "the obvious relationship that exists between the property that one has and his or her need for support and the ability to furnish it." *Capps v. Capps*, 69 N.C. App. 755, 757, 318 S.E.2d 346, 348 (1984).

Defendant argues that if it was error to hear the two claims together, plaintiff is barred by the doctrine of invited error from consideration of this argument. Plaintiff has waived any argument that the "trial court erred by conducting a single proceeding for both alimony and equitable distribution," as plaintiff did not request separate hearings and never objected to having both claims heard at the same time.

Invited error has been defined as

> "a legal error that is not a cause for complaint because the error occurred through the fault of the party now complaining." The evidentiary scholars have provided similar definitions; e.g., "the party who induces an error can't take advantage of it on appeal", or more colloquially, "you can't complain about a result you caused."

> 21 Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5039.2, at 841 (2d ed.2005) (footnotes omitted); *see also Frugard v. Pritchard*, 338 N.C. 508, 512, 450 S.E.2d 744, 746 (1994) ("A party may not complain of action which he induced." (citations omitted)).

**ROMULUS v. ROMULUS**

[215 N.C. App. 495 (2011)]

*Boykin v. Wilson Med. Ctr.*, 201 N.C. App. 559, 563, 686 S.E.2d 913, 916 (2009), *disc. review denied*, 363 N.C. 853, 694 S.E.2d 200 (2010).

In addition, defendant notes that plaintiff cannot demonstrate any prejudice because the trial court did actually enter the alimony order *after* the equitable distribution order, and the basis for the denial of plaintiff's alimony claim was not her financial need for support, which may be affected by the property distribution, but instead her marital fault. Also, plaintiff has requested only reversal of the order denying alimony and not the equitable distribution award. If it was error for the trial court to hear both claims together, this error could not be corrected without reversal of both orders.

We agree that even if we were to assume *arguendo* that the trial court should not have heard the alimony and equitable distribution claims together, plaintiff invited this error and was not prejudiced by it. We also note that N.C. Gen. Stat. § 50-20(f) does not address the details of scheduling of hearings, but only what the trial court should consider as to each aspect of the case, and that even if the trial court heard all of the claims in one trial, the trial court entered two separate and distinct orders. This argument is without merit.

## IV. Conclusion

For the reasons as stated above, the order denying alimony is affirmed. We remand the matter of equitable distribution to the trial court for additional findings of fact regarding the classification of the Darlington Avenue property, for conclusions of law based upon these findings of fact, and for adjustment to the distributive award, if the trial court should find and conclude that any adjustment is warranted.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

Judges HUNTER, Robert C. and HUNTER, JR., Robert N. concur.